**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

JAMES PERRY,

   Plaintiff,

v.

           Case No. 18-cv-00539-TCK-FHM

SAFECO INSURANCE COMPANY OF
AMERICA,

   Defendant.

**DEFENDANT SAFECO INSURANCE COMPANY OF AMERICA'S**
**MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

Respectfully submitted,

William W. O'Connor, OBA No. 13200
Jerrick L. Irby, OBA No. 30876
Margo E. Shipley, OBA No. 32118
**HALL, ESTILL, HARDWICK, GABLE,**
**GOLDEN & NELSON, P.C.**
320 South Boston Avenue, Suite 200
Tulsa, OK  74103-3706
Telephone: (918) 594-0400
Facsimile: (918) 594-0505
boconnor@hallestill.com
jirby@hallestill.com
mshipley@hallestill.com

**ATTORNEYS FOR DEFENDANT,**
**SAFECO INSURANCE COMPANY OF**
**AMERICA**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................1

STATEMENT OF UNDISPUTED FACTS .........................................................................2

    The Policy ................................................................................................................2

    The Accident and Plaintiff's Injuries .....................................................................2

    Plaintiff's Failure to Cooperate with Safeco...........................................................5

    Plaintiff's Lack of Harm .......................................................................................10

    Safeco's Expert Witness ........................................................................................12

SUMMARY JUDGMENT STANDARD ...........................................................................13

ARGUMENT AND AUTHORITY.....................................................................................14

I.     Summary Judgment is Appropriate on Plaintiff's Breach of Contract Claim. ..................14

II.    Summary Judgment is Appropriate on Plaintiff's Claim for Breach of the
       Duty of Good Faith and Fair Dealing. ...............................................................15

       A.    Plaintiff is Unable to Show He was Entitled to Recover UIM Benefits...............18

       B.    Safeco Did Not Delay in Evaluating Plaintiff's UIM claim.................................19

       C.    Safeco's Handling of Plaintiff's UIM Claim was Reasonable .............................22

       D.    Safeco's Conduct was not the Direct Cause of Plaintiff's Injury .........................23

III.   Summary Judgment in Favor of Safeco on the Issue of Punitive Damages
       is Proper ..............................................................................................................24

CONCLUSION...................................................................................................................25

## TABLE OF AUTHORITIES

**Pages(s)**

## CASES

*Adler v. Wal-Mart Stores, Inc.,*
 144 F.3d 664 (10th Cir. 1998) ........................................................................................13

*Badillo v. Mid Century Ins. Co.,*
 121 P.3d 1080 (Okla. 2005)........................................................................................17, 22

*Ball v. Willshire Ins. Co.,*
 221 P.3d 717 (Okla. 2009) .............................................................................................17

*Barre v. State Farm Fire & Cas. Co.,*
 982 F. Supp. 2d 1267 (N.D. Okla. 2013).........................................................................20

*Beers v. Hillory,*
 241 P.3d 285 (Okla. Civ. App. 2010) ..............................................................................18

*Bennett v. Windstream Commc'ns, Inc.,*
 30 F. Supp. 3d 1243 (N.D. Okla. 2014)............................................................................13

*Bituminous Cas. Corp. v. Pollard,*
 508 Fed. Appx. 780 (10th Cir. 2013)...............................................................................17

*Butterfly-Biles v. State Farm Life Ins. Co.,*
 Case No. 09-CV-0086-CVE-PJC, 2010 WL 346839 (N.D. Okla. Jan. 21, 2010).............17

*Buzzard v. Farmers Ins. Co.,*
 824 P.2d 1105 (Okla. 1991)............................................................................................22

*Carlos v. State Farm Mut. Auto. Ins. Co.,*
 935 P.2d 1182 (Okla. Civ. App. 1996) ............................................................................18

*Celotex Corp. v. Catrett,*
 477 U.S. 317 (1986).......................................................................................................13

*Christian v. American Home Assurance Co.,*
 577 P.2d 899 (Okla. 1977)........................................................................17, 19, 20, 21

*City Nat'l Bank & Trust Co. v. Jackson Nat'l Life Ins.,*
 804 P.2d 463 (Okla. Civ. App. 1990) ..............................................................................14

*Digital Design Grp., Inc. v. Info. Builders, Inc.,*
 24 P.3d 834 (Okla. 2001)................................................................................................14

*Dunbar v. State Farm Mut. Auto. Ins. Co.*,
    Case No. 10-CV-330-GKF-TLW, 2011 WL 5878383
    (N.D. Okla. Nov. 23, 2011) ..................................................................................................17, 18

*First Bank of Turley v. Fid. & Deposit Ins. Co.*,
    928 P.2d 298 (Okla. 1996) .........................................................................................................20

*Garnett v. Gov't Emps. Ins. Co.*,
    186 P.3d 935 (Okla. 2008) .........................................................................................................14

*Garrett v. Fairfield Ins. Co.*,
    Case No. 02-367-P, 2003 WL 23274567 (E.D. Okla. Oct. 22, 2003) ...............................20

*Gates v. Eller*,
    22 P.3d 1215 (Okla. 2001) .........................................................................................................18

*Gillham v. Lake Country Raceway*,
    24 P.3d 858 (Okla. 2001) ...........................................................................................................23

*Gruenberg v. Aetna Ins. Co.*,
    510 P.2d 1032 (Cal. 1973) .........................................................................................................21

*Haltom v. Great Northwest Ins. Co.*,
    460 Fed. Appx. 751 (10th Cir. 2012) .......................................................................................17

*London v. Trinity Companies*,
    877 P.2d 620 (Okla. Civ. App. 1994) ......................................................................................19

*Manis v. Hartford Fire Ins. Co.*,
    681 P.2d 760 (Okla. 1984) ............................................................................................19, 20, 22

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ....................................................................................................................13

*McCorkle v. Great Atlantic Ins. Co.*,
    637 P.2d 583 (Okla. 1981) ...................................................................................................17, 19

*McCoy v. Oklahoma Farm Bureau Mut. Ins. Co.*,
    841 P.2d 568 (Okla. 1992) .........................................................................................................20

*McLaughlin v. National Benefit Life Ins. Co.*,
    772 P.2d 383 (Okla. 1988) ...................................................................................................24, 25

*National Mut. Cas. Co. v. Britt*,
　　218 P.2d 1039 (Okla. 1950) ........................................................................22

*Oulds v. Principal Mutual Life Ins. Co.*,
　　6 F.3d 1431 (10th Cir. 1993) .................................................13, 14, 19, 20, 22

*Reeder v. American Econ. Ins. Co.*,
　　88 F.3d 892 (10th Cir. 1996) ......................................................................18

*Roberts v. State Farm Mut. Auto. Ins. Co.*,
　　61 Fed. Appx. 587 (10th Cir. 2003).............................................................22

*Thompson v. Shelter Mut. Ins.*,
　　875 F.2d 1460 (10th Cir. 1989)...................................................................20

*Timmons v. Royal Globe Ins. Co.*,
　　563 P.2d 907 (Okla. 1982)..........................................................................20

*Willis v. Midland Risk Ins. Co.*,
　　42 F.3d 607 (10th Cir. 1994) ...............................................................20, 24

## STATUTES

OKLA. STAT. tit. 12 § 3009.1.................................................................................18, 19

OKLA. STAT. tit. 23 § 9(A) .........................................................................................24

OKLA. STAT. tit. 23 § 22............................................................................................15

## OTHER AUTHORITIES

FED. R. CIV. P. 56.................................................................................................1, 13

LCvR7.1................................................................................................................1

LCvR56.1..............................................................................................................1

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rules 7.1 and 56.1, Defendant Safeco Insurance Company of America ("Safeco") respectfully requests that the Court enter summary judgment in its favor on Plaintiff James Perry's ("Plaintiff") claim for breach of contract, breach of the duty of good faith and fair dealing, and request for punitive damages.

## INTRODUCTION

On February 23, 2016, Plaintiff was rear-ended by Gerald Koch ("Koch") (the "Accident"). Plaintiff's vehicle did not sustain any damage; both Plaintiff and Koch drove their respective vehicles away from the scene. Plaintiff's wife was a passenger in the vehicle and had no injuries. Three days after the Accident, Plaintiff reported to an emergency room complaining of pain in his left wrist. While Plaintiff had some slight swelling of his hand, no fracture or other issues were noted and he was released with a prescription for Tylenol. Months later, Plaintiff complained of neck and shoulder pain. Plaintiff was subsequently diagnosed with degenerative back and neck conditions and carpel tunnel syndrome in his left hand. Plaintiff concedes that none of his degenerative back and neck conditions were caused by the Accident. Plaintiff maintains, however, that the Accident caused his carpel tunnel syndrome.

Six months after the Accident, Plaintiff notified Safeco of the Accident and a possible underinsured motorist ("UIM") claim. Plaintiff hired an attorney, Mr. Wandres, to represent him in his insurance dealings; Safeco had no direct interaction with Plaintiff. For over a year, Mr. Wandres delayed providing requested information necessary to evaluate Plaintiff's claim, including a medical authorization. Worse still, the medical authorization that Plaintiff belatedly completed and submitted to Safeco contained a wrong date of birth which further impeded Safeco's investigation. After *another* year of requests, Mr. Wandres finally provided Safeco with an updated medical release and enclosed Plaintiff's post-Accident medical bills and records.

1

Safeco immediately evaluated Plaintiff's UIM claim and determined, based upon the information it was able to obtain, that Plaintiff had been fairly compensated by payment of Koch's $25,000.00 liability policy.   From the $25,000.00 Plaintiff was paid by Koch's carrier, Plaintiff used $12,000.00 to pay all of his medical bills and attorneys' fees in full.   Plaintiff pocketed the remaining balance of approximately $13,000.00.   Therefore, UIM coverage was never triggered as Plaintiff was fully compensated under Koch's liability policy.   Accordingly, summary judgment in Safeco's favor is warranted.

## STATEMENT OF UNDISPUTED FACTS

### *-The Policy-*

1.     From October 2, 2015 to October 2, 2016, Plaintiff had in full force and effect a Safeco Automobile Policy No. Y8172909 (the "Policy").  (Exhibit 1).

2.     The Policy included coverage for a 2004 Toyota Land Cruiser and listed Plaintiff as the named insured.  (*Id*. at SAFECO_000005).

3.     The Policy provided $50,000.00 of UIM coverage per person.   (*Id*. at SAFECO_000006).

### *-The Accident and Plaintiff's Injuries-*

4.     On February 23, 2016, Plaintiff was rear-ended by Koch while driving his 2004 Toyota Land Cruiser.  (Plaintiff's First Amended Complaint at ¶ 6).

5.     Plaintiff's Toyota Land Cruiser did not sustain any visible physical damage. Plaintiff provided Safeco with a recorded statement affirming there was no visible damage to his vehicle. (Exhibit 2, Deposition of Plaintiff at 55:10-11, 127:19-25, 130:8-20, 135:13-21;  Exhibit 3, SAFECO_000747-750).

6.      Both Plaintiff and Koch drove their respective vehicles away from the Accident. (Exhibit 2, 56:8-9, 61:15-16).

7.      Plaintiff informed a police offer at the time of the Accident that there were no injuries.  Plaintiff's wife was passenger in the vehicle during the Accident and she had no injuries. (Exhibit 2, 54:20-22, 114:8-115:5).

8.      Plaintiff did not seek treatment on the day of the Accident, but three days later sought treatment for pain in his left wrist.  An x-ray was taken and no fracture was noted.  Plaintiff was provided a Velcro splint and given Tylenol.  (Exhibit 2, Deposition of Plaintiff at 62:1-6, 63:1-21; Exhibit 3, SAFECO_000350-354).

9.      Plaintiff followed-up with his primary care physician on February 29, 2016, who diagnosed Plaintiff with a wrist sprain.  Plaintiff next saw his primary care physician on March 30, 2016, where additional x-rays and an EMG were obtained.  Plaintiff's primary care physician noted mild *degenerative* changes in Plaintiff's wrist but no fracture.  (Exhibit 2, 65:2-66:15; Exhibit 3, SAFECO_000381-382, SAFECO_000386-390).

10.     Plaintiff never complained of any neck or shoulder pain until May 12, 2016, nearly three months after the Accident.  At that time he was also diagnosed with carpal tunnel in his left arm.  (Exhibit 2, 72:20-73:21; Exhibit 3, SAFECO_392-394).

11.     On May 26, 2016, Plaintiff underwent an MRI on his cervical spine.  There, *degenerative* changes were noted.   Plaintiff had previously injured his neck at work in 2006. (Exhibit 2, 46:2-23, 74:8-22; Exhibit 3, SAFECO_884-885).

12.     On July 28, 2016, Plaintiff underwent a left carpal tunnel release and left trigger finger surgery which assisted with Plaintiff's wrist pain.  Plaintiff was ultimately released from care as his physician could not have been happier with the results of the surgery.  Plaintiff has

finished treating for his wrist.    (Exhibit 2, 80:11-23, 88:19-90:5, 97:3-4; Exhibit 3, SAFECO_000871-872, SAFECO_000866-867).

13.    Concerning Plaintiff's neck pain, the diagnosis was a *degenerative* condition. Plaintiff did not take any medication for his neck pain.  (Exhibit 2, 58:11-59:12).

14.    Plaintiff's shoulder pain was also diagnosed to be related to *chronic* and *degenerative* conditions, and was distinct and separate from his wrist issue.  (Exhibit 2, 91:22-93:1).

15.    After filing this lawsuit, Plaintiff consented to an independent medical examination ("IME") with Dr. Antoine Jabbour.  Dr. Jabbour confirmed that Plaintiff has degenerative cervical disc disease, noted no rotator cuff tear in his left shoulder, identified arthritis in his left shoulder, degenerative changes in his left shoulder, and concluded there was no traumatic abnormality in Plaintiff's left shoulder or neck caused by the Accident.  Dr. Jabbour recommended no further treatment for Plaintiff's claimed injuries.  Plaintiff agrees that Dr. Jabbour is a qualified physician and has no challenges to his skills or qualifications.  (Exhibit 2, 158:22-24, 159:4-14, 160:5-164:18; Exhibit 4, Dr. Jabbour's IME Report).

16.    Plaintiff is not seeking recovery of any medical expenses related to his degenerative conditions.  (Exhibit 2, 101:16-23).

17.    Plaintiff never advised his employer that he was unable to do any of his job functions because of his claimed injuries.  (Exhibit 2, 61:1-11).

18.    On April 12, 2018, Plaintiff submitted a summary of damages reflecting medical-related expenses of $27,667.97 to Safeco, which he represents is a complete summary of his damages related to the Accident.  However, of this amount, Plaintiff's health insurer actually paid only $7,032.31.  Of that reduced amount, Plaintiff's health insurer accepted a mere $3,548.82 as

full and final subrogated payment from Plaintiff.    (Exhibit 2, 100:14-21; Exhibit 3, SAFECO_000329-332; Exhibit 5, SAFECO_001837-001843; Exhibit 6, SAFECO_001586-1587).

### -Plaintiff's Failure to Cooperate with Safeco-

19.    Plaintiff owed duties and obligations to Safeco under the Policy.  Plaintiff was required to comply with the terms of the Policy.   (Exhibit 1, SAFECO_000025; Exhibit 2, 34:9-15; 40:4-42:19).

20.    Safeco had no duty to provide UIM coverage to Plaintiff unless UIM coverage was triggered and Plaintiff fully complied with the terms of the Policy.  (*Id.*).

21.    Plaintiff had a duty to promptly notify Safeco of the Accident and his claimed loss. (*Id.*).

22.    Plaintiff had a duty to cooperate with Safeco's investigation of Plaintiff's claim. (*Id.*; *see also* Exhibit 2, 148:5-23).

23.    Plaintiff had a duty to submit to physical examinations.   (Exhibit 1, SAFECO_000025; Exhibit 2, 34:9-15; 40:4-42:19).

24.    Plaintiff had a duty to provide Safeco with documentation of all of his claimed losses.  (*Id.*; *see also* Exhibit 2, 148:5-23).

25.    Plaintiff had a duty to provide his medical bills to Safeco.  (Exhibit 2, 42:15-16; 147:25-148:23).

26.    Plaintiff had a duty to provide Safeco with medical authorizations.  (Exhibit 1, SAFECO_000025; Exhibit 2, 41:22-42:2, 17-19).

27.     Plaintiff never personally communicated with Safeco.  Because Plaintiff was represented by counsel in his pre-suit dealings with Safeco, his counsel had a duty to provide all of these items as obligated under the Policy.  (Exhibit 2, 108:3-5, 109:6-9, 16-19).

28.     Plaintiff, through his counsel, first notified Safeco of the Accident on August 11, 2016, approximately six months after it occurred.  Plaintiff's attorney informed Safeco that Plaintiff might possibly submit an UIM claim, but that none of Plaintiff's files were currently available.  (Exhibit 2, 109:20-110:5, 112:9-23; Exhibit 3, SAFECO_000786, 791).

29.     Safeco responded that same day, which Plaintiff agrees was prompt, and requested medical bills, records, reports, wage loss documentation, medical and wage authorizations, a recorded statement, and prior medical records.  (Exhibit 2, 108:20-109:9, 109:16-19, 112:24-113:3; Exhibit 3, SAFECO_787).

30.     On August 15, 2016, Safeco attempted to speak with Plaintiff's attorney and left him a message.  (Exhibit 2, 113:23-114:7; Exhibit 3, SAFECO_000782-783).

31.     On August 17, 2016, Safeco again attempted to obtain information concerning Plaintiff's claimed injuries, which Plaintiff's attorney did not have at the time.  (Exhibit 2, 114:8-25, 116:3-10; Exhibit 3, SAFECO_000781).

32.     On August 22, 2016, Safeco again requested medical bills, records and reports, wage loss documentation, Plaintiff's recorded statement, and medical records for five years prior to the Accident.  Safeco further promptly provided Plaintiff's attorney with a medical authorization form and requested that Plaintiff complete and return it.  (Exhibit 2, 116:11-118:16; Exhibit 3, SAFECO_000773-778).

33.     Plaintiff agrees it was reasonable for Safeco to want to review his prior medical records.  (Exhibit 2, 139:24-140:16).

34.     On September 22, 2016, Safeco again called and left a message for Plaintiff's counsel.  Safeco also sent Plaintiff's counsel a letter requesting an opportunity to discuss the claim. (Exhibit 2, 120:24-121:23, 121:24-122:6; Exhibit 3, SAFECO_000770, 769).

35.     On December 2, 2016, Safeco again called Plaintiff's counsel but was told that he was still not available.  (Exhibit 2, 122:7-123:4; Exhibit 3, SAFECO_000762).

36.     On December 8, 2016, Safeco called Plaintiff's counsel but was told that he was not available.  Safeco followed up with a letter to Plaintiff's attorney that same day requesting a return call.  (Exhibit 2, 123:5-18; Exhibit 3, SAFECO_000760-761).

37.     On January 10, 2017, Safeco again notified Plaintiff's counsel that it had been trying to reach him concerning the information Plaintiff was obligated to provide Safeco so that it could evaluate his claim.  Plaintiff agrees there had been very little communication from his counsel to Safeco despite the Accident having occurred nearly a year prior.  (Exhibit 2, 123:20-125:16; Exhibit 3, SAFECO_000757-758).

38.     On February 22, 2017, Safeco spoke with Plaintiff's attorney who advised that Plaintiff was still treating and there were no medical bills or records to provide.  Plaintiff's attorney refused to provide a medical authorization at that time, despite Plaintiff's obligation to do so. (Exhibit 2, 128:12-129:15, 130:4-7; Exhibit 3, SAFECO_000663).

39.     On March 22, 2017, Safeco called Plaintiff's counsel but was told he was not available.  Safeco follow-up with a letter to counsel.  (Exhibit 2, 130:21-131:9; Exhibit 3, SAFECO_000661-662).

40.     On April 26, 2017, Safeco called Plaintiff's counsel but was told he was not available. Safeco followed up with an email to counsel.  (Exhibit 2, 131:10-132:2; Exhibit 3, SAFECO_000659-660).

41. On June 14, 2017, Safeco called Plaintiff's counsel but was told he was not available. Safeco followed up with a letter to counsel asking for a return call. (Exhibit 2, 132:3-22; Exhibit 3, SAFECO_000657-658).

42. Finally, on August 8, 2017, nearly 18 months after the Accident, Safeco was able to reach Plaintiff's attorney who advised that Plaintiff had finished treatment and would soon prepare a UIM demand. (Exhibit 2, 132:24-133:14; Exhibit 3, SAFECO_000656).

43. On August 8, 2017, Safeco wrote to Plaintiff's attorney and again requested Plaintiff's medical bills and information. (Exhibit 2, 133:15-25; Exhibit 3, SAFECO_000655).

44. On October 16, 2017, Plaintiff finally provided a recorded statement. That same day Safeco again requested a medical authorization. (Exhibit 2, 138:23-140:16; Exhibit 3, SAFECO_000632-633).

45. On December 11, 2017, Safeco again followed up with Plaintiff's counsel and requested a medical authorization and list of medical providers for a period of five years preceding the Accident. (Exhibit 2, 140:17-24; Exhibit 3, SAFECO_000599-609).

46. On December 11, 2017, nearly two years after the Accident and after numerous requests, Plaintiff's counsel finally provided Safeco with a medical authorization. Unfortunately, the medical authorization was materially flawed and contained an incorrect date of birth. (Exhibit 2, 140:25-141:3, Exhibit 3, SAFECO_000583-586).

47. On April 12, 2018, over two years following the Accident, Plaintiff's counsel finally provided copies of Plaintiff's medical records, bills, and other damages, and demanded that Safeco tender UIM coverage limits. This is the first time that Plaintiff had made a UIM demand or claim. (Exhibit 2, 141:4-142:24; Exhibit 3, SAFECO_000329-332).

48.     On May 3, 2018, Safeco informed Plaintiff's counsel that some medical bills were missing, advised that Safeco had been unable to retrieve Plaintiff's prior medical records with the authorization Plaintiff provided, and asked again that Plaintiff provide his medical records. (Exhibit 2, 143:1-22; Exhibit 3, SAFECO_000314).

49.     Plaintiff's counsel responded that same day and advised that he had not obtained Plaintiff's medical records because it would cost money.  Plaintiff agrees that his attorney should have provided the medical records; that it would have been easier and quicker for his counsel to have done so as opposed to Safeco; and that it was reasonable for Safeco to need this information to evaluate his UIM claim.  (Exhibit 2, 143:23-144:9, 145:5-23, 147:25-148:23; Exhibit 3, SAFECO_000311-312).

50.     Safeco responded by requesting an independent medical examination, which Plaintiff agreed was proper.  (Exhibit 2, 148:24-150:7; Exhibit 3, SAFECO_000284-285).

51.     On May 8, 2018, Safeco notified Plaintiff that, based on the information provided, Plaintiff appeared to have been fully compensated by Koch's liability policy.  Safeco advised that it would continue to evaluate his UIM claim, but still needed Plaintiff's prior medical records. (Exhibit 3, SAFECO_000298).

52.     On May 16, 2018, Safeco discovered that Plaintiff had provided an inaccurate medical authorization that incorrectly identified Plaintiff's date of birth.  Plaintiff agrees that his attorney could have reviewed the medical authorization he submitted and remedied this error. Plaintiff also agrees that medical providers would not release medical records with an incorrect medical authorization.  (Exhibit 2, 150:8-18, 151:17-153:5; Exhibit 3, SAFECO_000265).

53. On May 16, 2018, Safeco notified Plaintiff's counsel of the error in the medical authorization Plaintiff had provided. Plaintiff's counsel apologized for this error and provided updated medical authorizations. (Exhibit 2, 153:6-154:11; Exhibit 3, SAFECO_000226-234).

54. On June 11, 2018, Safeco advised that it was attempting to obtain Plaintiff's medical records with the corrected medical authorization it had recently received, as well as secure a doctor to perform an IME. (Exhibit 3, SAFECO_000116-117).

55. On August 3, 2018, Safeco again notified Plaintiff of its efforts to secure an IME. Plaintiff filed this action on September 18, 2018, before a scheduled IME could take place. (Plaintiff's First Amended Complaint; Exhibit 2, 156:9-11; Exhibit 3, SAFECO_000074).

56. Plaintiff testified that Safeco was prompt and diligent in contacting and following up with Plaintiff's counsel. (Exhibit 2, 112:24-113:3, 113:13-19, 113:23-114:7; 117:25-118:16, 121:24-122:6, 123:5-18, 131:3-9, 132:3-22, 133:11-25).

57. Plaintiff agrees it was reasonable for Safeco to want to review his prior medical records. (Exhibit 2, 139:24-140:16).

### -Plaintiff's Lack of Harm-

58. Plaintiff filed this lawsuit because "it look[ed] like somebody's dragging their feet." (Exhibit 2, 156:12-18).

59. But now, Plaintiff agrees that it was not Safeco dragging its feet, but rather his attorney, Mr. Wandres. Plaintiff agrees Safeco was prompt and diligent in contacting and following-up with his attorney. (Exhibit 2, 112:24-113:3, 113:13-19, 113:23-114:7; 117:25-118:16, 121:24-122:6, 123:5-18, 131:3-9, 132:3-22, 133:11-25, 156:12-157:23, 158:11-21).

10

60.     Plaintiff's health insurance paid for his medical bills that arose from the Accident. No medical liens or related claims have been filed against Plaintiff as a result of unpaid medical bills.  (Exhibit 2, 99:19-21, 100:2-4).

61.     Of the medical bills that Plaintiff submitted to Safeco for consideration of his UIM claim, Plaintiff's health insurer actually paid only $7,032.31.  Of that, Plaintiff paid his health insurer a mere $3,548.82 as full and final payment as part of his subrogation obligation in settling with Koch.  (Exhibit 5, SAFECO_001837-1843; Exhibit 6, SAFECO_001586-1587).

62.     UIM coverage under the Policy would only be triggered if Koch's $25,000.00 liability limits were insufficient to cover Plaintiff's injuries and treatment incurred as a result of the Accident.  (Exhibit 2, 119:10-15).

63.     Koch's liability policy paid the entire $25,000.00 limits to Plaintiff.  Of that amount, Plaintiff paid his medical expenses in full and his attorneys.  Plaintiff personally retained $13,000.00 (over half) of the $25,000.00 liability policy payment.  (Exhibit 2, 120:1-16, 145:24-146:18).

64.     Koch's liability policy payment of $25,000.00 was sufficient to compensate Plaintiff.  Plaintiff has not incurred any out-of-pocket expense related to the Accident.  (Exhibit 2, 120:1-16, 145:24-146:18,173:4-8).

65.     Plaintiff contends he incurred lost wages of a maximum of $2,500.00.  However, Plaintiff was fully compensated by his employer for any and all time he missed from work related to the Accident.  (Exhibit 2, 167:4-22, 168:9-18).

66.     Plaintiff agrees that if his injuries and treatment related solely to the Accident are adequately covered by Koch's liability insurance policy, then Plaintiff's coverage for UIM is not implicated.  (Exhibit 2, 119:16-20).

67.     Plaintiff admits that the Policy's UIM coverage only applies to injuries caused by the Accident.  Any of Plaintiff's claimed injuries, such as degenerative conditions, that were not caused by the Accident would not be covered.  (Exhibit 2, 37:25-38:22).

68.     Plaintiff agrees that there is a legitimate dispute concerning the value of his claim and the source of his claimed injuries.  (Exhibit 2, 174:24-175:12).

69.     No action of Safeco caused Plaintiff's claimed physical injury.  (Exhibit 2, 172:3-5).

### *-Safeco's Expert Witness-*

70.     Plaintiff does not have an expert witness on any issues related to the handling of Plaintiff's UIM claim.  Safeco's expert witness, Diane L. Luther, ("Luther"), has opined that a legitimate dispute exists concerning the valuation and causation of Plaintiff's claim for injuries to his left wrist.  Luther asserts that Safeco reasonably handled Plaintiff's UIM claim within acceptable insurance industry standards, stayed in constant contact with Plaintiff's attorney, and diligently sought information necessary to evaluate Plaintiff's UIM claim.  (Exhibit 7, Luther Expert Report).

71.     In Luther's expert opinion, only $6,578 of the $7,032.31 paid by Plaintiff's health insurer for his claimed injuries should be accepted.  This, along with Plaintiff's claimed lost wages of $2,500.00, results in "special damages" of approximately $9,000.00.  Any "general damages" for pain and suffering exceeding the remaining $16,000.00 in liability policy coverage is a legitimate dispute.  (*Id.*).

72.     In Luther's expert opinion, Safeco handled Plaintiff's claim within acceptable insurance industry standards.  (*Id.*).

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  Federal Rule of Civil Procedure 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Bennett v. Windstream Commc'ns, Inc.*, 30 F. Supp. 3d 1243, 1252 (N.D. Okla. 2014) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).  When the moving party has carried its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Bennett*, 30 F. Supp. 3d at 1252-53 (*citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)) (citations omitted).

"An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. . . . An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Bennett*, 30 F. Supp. 3d at 1253 (*citing Adler*, 144 F.3d at 670) (citations omitted).  In a bad faith action, a plaintiff may not avoid summary judgment by merely alleging that its insurer breached its duties of good faith and fair dealing.  "A jury question arises only where the relevant facts are in dispute or where the undisputed facts permit differing inferences as to the reasonableness and good faith of the insurer's conduct." *Oulds v. Principal Mutual Life Ins. Co.*, 6 F.3d 1431, 1436 (10th Cir. 1993).  If the undisputed evidence

13

fails to demonstrate that Safeco acted unreasonably and in bad faith, summary judgment is appropriate. *Id.*; *see also Garnett v. Gov't Emps. Ins. Co.*, 186 P.3d 935, 944 (Okla. 2008).

The Oklahoma Court of Civil Appeals has stated that "before the issue of insurer's alleged bad faith may be submitted to the jury, the Trial Court must first determine, under the facts of the particular case and as a matter of law, whether insurer's conduct may be reasonably perceived as tortious." *City Nat'l Bank & Trust Co. v. Jackson Nat'l Life Ins.*, 804 P.2d 463, 468 (Okla. Civ. App. 1990). "[U]ntil the facts, when construed most favorably against the insurer, have established what might be reasonably perceived as tortious conduct on the part of the insurer, the legal gate to submission of the issue to the jury remains closed." *Id*. at 468-69.

## ARGUMENT AND AUTHORITY

### I.    Summary Judgment is Appropriate on Plaintiff's Breach of Contract Claim.

In order to recover on a breach of contract theory, Plaintiff is required to prove (1) formation of a contract; (2) breach of the contract; and (3) damages as a direct result of the breach. *Digital Design Grp., Inc. v. Info. Builders, Inc.*, 24 P.3d 834, 843 (Okla. 2001). Here, Plaintiff had a contract for insurance with Safeco at the time of the Accident which provided $50,000.00 of UIM coverage per person. (Statement of Undisputed Facts "SOF" ¶¶ 1-3). The undisputed evidence, however, demonstrates that Safeco did not breach the contract. Even if it did, Plaintiff has not suffered any damages. The Policy provides that Safeco would pay for Plaintiff's damages sustained and caused by the Accident that he is legally entitled to recover from Koch if such injuries exceeded the amount of insurance carried by Koch. Exhibit 1, SAFECO_000017-18. Plaintiff agrees that if his injuries and treatment related solely to the Accident are adequately covered by Koch's liability insurance policy, then Plaintiff's coverage for UIM is not implicated. (SOF ¶¶ 62, 66).

Here, Plaintiff ultimately submitted medical-related expenses of $27,948.34 to Safeco. (SOF ¶ 18). Of this amount, Plaintiff's health insurer actually paid the service providers $7,032.31. (*Id.*).[1] Only the actual amounts paid for any service in treatment of Plaintiff are admissible. OKLA. STAT. tit. 12, § 3009.1. Plaintiff received $25,000.00 from Koch's liability insurance policy. (SOF ¶¶ 63-64). After paying his subrogated medical expenses and his attorneys, Plaintiff personally retained approximately $13,000.00 of the liability insurance payment. (*Id.*). Plaintiff had no out-of-pocket expenses associated with the Accident. (SOF ¶ 64). Plaintiff's claimed injuries plainly did not exceed the value of Koch's $25,000.00 liability policy. Plaintiff was not entitled to any UIM benefits and Safeco cannot be said to have breached the Policy as a matter of law.

Even if Plaintiff could demonstrate that Safeco breached the Policy—he cannot—Plaintiff has not suffered any damages as a result. Damages for breach of an insurance contract are "deemed to be the amount due by the terms of the obligation[.]" OKLA. STAT. tit. 23, § 22. Here, Plaintiff concedes that the terms of the Policy only require payment of UIM benefits if his injuries exceed the $25,000.00 limit of Koch's liability insurance policy. (SOF ¶ 66). UIM was never triggered and Plaintiff has no damages. Accordingly, Safeco respectfully submits that judgment in its favor as a matter of law is proper.

## II.    Summary Judgment is Appropriate on Plaintiff's Claim for Breach of the Duty of Good Faith and Fair Dealing.

Safeco acted with good faith and dealt fairly with Plaintiff at all times. Plaintiff's primary complaint against Safeco is the amount of time he perceives it took Safeco to evaluate his UIM claim. However, the undisputed evidence demonstrates that any delay was attributable solely to

---

[1] Of that reduced amount, Plaintiff's health insurer accepted $3,548.82 from Plaintiff as payment in full as part of his subrogation obligation in settling his claim with Koch. (*Id.*; SOF ¶¶ 61, 63).

Plaintiff's attorney.  During his deposition, after having been shown all of Safeco's efforts that were thwarted by his attorney, Plaintiff agreed that no delay was attributable to Safeco:

```
Q    Do you know why you filed a lawsuit in
September of 2018?
        MS. WANDRES:  Object to the form.
        THE WITNESS:  One was for the time period
it took -- it's been taking this -- these issues.
Like I said, it's been three years.  It looks like
somebody's dragging their feet.
BY MR. O'CONNOR:
    Q    We've been through all the
communications --
    A    I understand that.
    Q    -- with Safeco; right?
    A    Correct.
    Q    Do you think Safeco was dragging its feet
when you filed your lawsuit?
    A    Well, I'm not -- it's something I would
have to think about after reading all this.

    Q    Well, you brought the suit in September of
2018.  I'm here to depose you, and I need to know,
for the record, if you think, given what you've gone
over today and seeing the communications with your
insurance carrier between you and the carrier,
between your wife and the carrier, and between your
counsel and the carrier, if you think Safeco was
dragging its feet when you filed that lawsuit?
        MS. WANDRES:  Object to the form.
        THE WITNESS:  Just from what I've seen and
heard, yes.
BY MR. O'CONNOR:
    Q    How did Safeco drag its feet?
    A    No.  I'm saying the opposite.
    Q    So you're saying Safeco did not drag its
feet?
    A    That's what I'm saying, from what I've
seen.
                        . . .
```

16

```
Q    I thought just a moment ago you said you
were no longer attributing the period of time that
it has taken to Safeco?
     A    Yeah.
     Q    Is that accurate?
     A    Yes.
```

(Exhibit 2, 156:12-157:21, 158:11-21).

In Oklahoma, an insurer has a duty to deal fairly and in good faith with its insured. *Dunbar v. State Farm Mut. Auto. Ins. Co.*, Case No. 10-CV-330-GKF-TLW, 2011 WL 5878383, *7 (N.D. Okla. Nov. 23, 2011) (citing *Christian v. American Home Assurance Co.*, 577 P.2d 899, 905 (Okla. 1977)). To make a prima facie case against an insurance company for bad faith, however, a plaintiff must establish:

> (1) Claimant was entitled to coverage under the insurance policy at issue; (2) the insurer had no reasonable basis for delaying payment; (3) the insurer did not deal fairly and in good faith with the claimant; and (4) the insurer's violation of its duty of good faith and fair dealing was the direct cause of the claimant's injury. **The absence of any one of these elements defeats a bad faith claim**.

*Bituminous Cas. Corp. v. Pollard*, 508 Fed. Appx. 780, 791 (10th Cir. 2013) (citing *Ball v. Willshire Ins. Co.*, 221 P.3d 717, 724 (Okla. 2009)) (emphasis added). Plaintiff bears the burden of proof on each element. *McCorkle v. Great Atlantic Ins. Co.*, 637 P.2d 583, 587 (Okla. 1981). "[W]hether an insurer breaches its duty of good faith and fair dealing is dependent on the particular facts and circumstances in each case." *Haltom v. Great Northwest Ins. Co.*, 460 Fed. Appx. 751, 757 (10th Cir. 2012) (citation omitted). "The level of culpability required for bad faith is 'more than simple negligence, but less than the reckless conduct necessary to sanction a punitive damage award . . . .'" *Butterfly-Biles v. State Farm Life Ins. Co.*, Case No. 09-CV-0086-CVE-PJC, 2010 WL 346839, *7 (N.D. Okla. Jan. 21, 2010) (quoting *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1093 (Okla. 2005)). "A clear showing that the insurer acted unreasonably

and in bad faith is necessary to show a breach of that duty." *Dunbar*, 2011 WL 5878383 at *7 (citation and quotation marks omitted). "'Where an insurer has demonstrated a reasonable basis for its actions, bad faith cannot exist as a matter of law,' and the insurer is entitled to summary judgment." *Id*. (quoting *Beers v. Hillory*, 241 P.3d 285, 293 (Okla. Civ. App. 2010)).

### A.      Plaintiff is Unable to Show He was Entitled to Recover UIM Benefits.

Summary judgment is appropriate because Plaintiff is unable to prove he was entitled to recover UIM benefits. The duty of an insurer to make a timely payment on an underinsured's claim "is triggered when the insurer's investigation of the claim leads to an evaluation that the insured's total claim likely exceeds the amount of underlying liability insurance." *Dunbar*, 2011 WL 5878383 at *9 (citing *Reeder v. American Econ. Ins. Co.*, 88 F.3d 892, 894 (10th Cir. 1996). "[A]n injured insured must demonstrate that the preconditions for loss under the uninsured motorist coverage exist before he or she can recover under the primary uninsured motorist coverage." *Gates v. Eller*, 22 P.3d 1215, 1219 (Okla. 2001). "If there is no reasonable expectation that the tortfeasor's liability limits will be exhausted, then no obligation arises for the UM carrier to pay benefits under the insured's policy." *Carlos v. State Farm Mut. Auto. Ins. Co.*, 935 P.2d 1182, 1185 (Okla. Civ. App. 1996).

Here, Plaintiff is unable to demonstrate that he was not adequately compensated by Koch's $25,000.00 liability policy. (SOF ¶¶ 4-18, 60-61, 62-67, 70-72). Instead, based on the information provided to Safeco, there was a reasonable expectation that Koch's liability coverage would fully compensate Plaintiff. This expectation was not only reasonable, it was also correct. It is undisputed that the actual amount paid by Plaintiff's health insurer for his medical-related expenses was $7,032.31; of this, Plaintiff only repaid his health insurer $3,548.82 in subrogation. (SOF ¶¶ 18, 61, 63). Only the actual amounts paid in treatment of Plaintiff are admissible. OKLA.

STAT. tit. 12, § 3009.1.  No medical liens or related claims have been filed against Plaintiff and he has not incurred any out-of-pocket expenses.  (SOF ¶¶ 60, 64).  Plaintiff is not seeking damages for his degenerative neck and back conditions.  (SOF ¶¶ 10-11, 13-16).

Plaintiff's only other claimed damages were lost wages of $2,500.00.  (SOF ¶¶ 64-65).  However, Plaintiff admits he did not actually sustain any lost wages.  Plaintiff was fully compensated by his employer for any time he missed from work related to the Accident.  (*Id.*; SOF ¶ 17).  Viewing it most favorably to Plaintiff and including all of the paid medical expenses and lost wages he claims were related to the Accident, Plaintiff's total claim still never came close to exceeding Koch's liability policy limit of $25,000.00.

Plaintiff pocketed *at least* $13,000.00—over half—of Koch's $25,000.00 liability policy payment. (SOF ¶ 63).  UIM coverage under the Policy would only be triggered if Koch's liability policy limit was insufficient to cover Plaintiff's injuries and treatment incurred as a result of the Accident.  (SOF ¶ 62).  Safeco's determination that Plaintiff was made whole by Koch's insurance policy was reasonable and correct; summary judgment is proper as a matter of law.

## B.      Safeco Did Not Delay in Evaluating Plaintiff's UIM Claim.

Tort liability may only be imposed where an insurer acts unreasonably in withholding payment; a bad faith claim will not lie in the presence of a legitimate dispute.  *London v. Trinity Companies*, 877 P.2d 620, 622 (Okla. Civ. App. 1994) (citing *McCorkle*, 637 P.2d at 587); *Christian*, 577 P.2d at 905; *Manis v. Hartford Fire Ins. Co.*, 681 P.2d 760, 762 (Okla. 1984).  Mere disagreement between the insurer and insured does not give rise to tort liability. *Christian*, 577 P.2d at 905.  "Rather, tort liability may be imposed only where there is a clear showing that the insurer unreasonably, and in bad faith, withholds payment of the claim of its insured." *Id.*; *McCorkle*, 637 P.2d at 587.

19

Furthermore, "[t]he insurer does not breach the duty of good faith by refusing to pay a claim or by litigating a dispute with its insured if there is a 'legitimate dispute' as to coverage or the amount of the claim, and the insurer's position is 'reasonable and legitimate'." *Oulds*, 6 F.3d at 1436 (citing *Thompson v. Shelter Mut. Ins.*, 875 F.2d 1460, 1462 (10th Cir. 1989) (quoting *Manis*, 681 P.2d at 762)). In order to establish a cause of action for bad faith, the insured must present evidence from which a jury could reasonably conclude that the insurer did not have a reasonable good faith reason for withholding payment under the policy. *McCoy v. Oklahoma Farm Bureau Mut. Ins. Co.*, 841 P.2d 568, 572 (Okla. 1992). Additionally, "[t]he entire course of conduct between the parties is relevant to the question whether the insurer acted in good faith." *Willis v. Midland Risk Ins. Co.*, 42 F.3d 607, 613 (10th Cir. 1994) (citing *Timmons v. Royal Globe Ins. Co.*, 563 P.2d 907, 917 (Okla. 1982)).[2]

Here, it is undisputed that Plaintiff owed duties and obligations to Safeco under the Policy. (SOF ¶ 19). Plaintiff's duties and obligations to Safeco included, among other things, compliance with the terms of the Policy; prompt notification of the Accident and claimed loss; submission to physical examinations; providing documentation of claimed losses; providing medical bills and records; and providing accurate medical authorizations to Safeco. (SOF ¶¶ 21-27). It is further undisputed that Safeco had no duty to provide UIM coverage to Plaintiff unless Plaintiff fully complied with the terms of the Policy. (SOF ¶ 20). Insureds and their agents have a reciprocal

---

[2] *See also Barre v. State Farm Fire & Cas. Co.,* 982 F. Supp. 2d 1267, 1277 (N.D. Okla. 2013) (where insurer's delay in investigation and payment was attributable to the insureds' refusal to provide necessary documents or cooperate with insurer's investigation, summary judgment was granted in favor of insurer on bad faith claim). "[A]n insured's failure to provide information critical to the insurer's consideration of the claim may "serve as a defense to defeat liability or . . . to reduce recovery." *Garrett v. Fairfield Ins. Co.*, Case No. 02-367-P, 2003 WL 23274567, *12 (E.D. Okla. Oct. 22, 2003) (citing *First Bank of Turley v. Fid. & Deposit Ins. Co.*, 928 P.2d 298, 308-09 (Okla. 1996)).

duty to deal fairly and act in good faith with the insurance company. *Christian*, 577 P.2d at 904; *Gruenberg v. Aetna Ins. Co.*, 510 P.2d 1032, 1036-37 (Cal. 1973).

Plaintiff sued Safeco because "it look[ed] like somebody's dragging their feet." (SOF ¶ 58). Plaintiff concedes, as he must, that the only person dragging his feet was Plaintiff's attorney. (SOF ¶¶ 56, 59). Safeco is not liable for Plaintiff and his attorney's refusal to cooperate and resulting delay in providing information necessary for Safeco to evaluate Plaintiff's UIM claim. The undisputed evidence demonstrates that Safeco consistently, over the course of nearly two years, contacted Plaintiff's attorney seeking current and prior medical records, wage loss documentation, a recorded statement, a medical authorization, and a demand package from Plaintiff. (SOF ¶¶ 28-46). These efforts were largely ignored. For example, Plaintiff stonewalled for nearly two years after the Accident before providing Safeco with a medical authorization—one that was fatally flawed. (SOF ¶ 46). Plaintiff delayed providing Safeco with a recorded state for fourteen months after Safeco first requested it. (SOF ¶ 44). Plaintiff delayed for over two years following the Accident before producing his medical records and bills he claimed we related to the Accident. (SOF ¶ 47). Even then, Plaintiff refused to obtain and produce missing documents to Safeco, despite admitting it would have been most efficient for him or his counsel to obtain the same. (SOF ¶¶ 48-49). Finally, Plaintiff filed this action while Safeco was attempting to secure his IME, creating additional delay. (SOF ¶¶ 50, 54-55).

Plaintiff cannot now, in good conscience, allege that Safeco "delayed" anything when the record so clearly reflects that any delay was attributable to Plaintiff's attorney's refusal to cooperate with Safeco. It would be manifestly unjust to consider Safeco as having acted in bad faith when the undisputed evidenced demonstrates it was *Plaintiff*, through his counsel, who obstructed the handling of Plaintiff's UIM claim. (SOF ¶¶ 19-57). Safeco respectfully submits

21

that, when viewing the entire course of conduct between the parties, the undisputed evidence demonstrates that Safeco acted reasonably and in good faith and no material delay is attributable to it. Summary judgment in Safeco's favor is appropriate.

### C. Safeco's Handling of Plaintiff's UIM Claim was Reasonable.

An insurer has a duty to "conduct an investigation reasonably appropriate under the circumstances." *Buzzard v. Farmers Ins. Co.,* 824 P.2d 1105, 1109 (Okla. 1991). However, that duty is not unlimited, and is judged according to the circumstances. *Roberts v. State Farm Mut. Auto. Ins. Co.,* 61 Fed. Appx. 587, 590-91 (10th Cir. 2003). "An error in judgment does not constitute bad faith." *Badillo*, 121 P.3d at 1116 n.15 (citing *National Mut. Cas. Co. v. Britt*, 218 P.2d 1039, 1039 (Okla. 1950)). Bad faith requires more than a mere mistake on the part of the insurance company. *Id.* Oklahoma law requires that an insurer's actions be reasonable and legitimate under the circumstances, not necessarily correct. *Manis*, 681 P.2d at 762; *Oulds*, 6 F.3d at 1442 (fact that a reasonable jury could find in favor of an insurer is strong evidence that the dispute is "legitimate" and that the insurer did not engage in bad faith by denying the claim). To establish a cause of action for "bad faith" an insured must prove there was no legitimate dispute. *Manis*, 681 P.2d at 762.

Here, Plaintiff concedes that a legitimate dispute exists concerning the nature and value of Plaintiff's injuries and UIM claim. (SOF ¶ 68). Safeco's expert witness, Luther, agrees. (SOF ¶¶ 70-72). Luther further opined that Safeco acted reasonably, diligently, promptly, and in conformance with insurance industry standards. (*Id.*) In Luther's expert opinion, a legitimate dispute exists concerning the amount attributable to Plaintiff's injuries. Luther would only allow $6,578 of the $7,032.31 paid by Plaintiff's health insurer for his claimed injuries. (*Id.*) This, along with Plaintiff's claimed lost wages of $2,500.00, results in "special damages" of approximately

$9,000.00. Any "general damages" for pain and suffering exceeding the remaining $16,000.00 in liability policy coverage is a legitimate dispute. (*Id.*)

Existence of a legitimate dispute is fatal to Plaintiff's claim for bad faith. So too is the reasonableness of Safeco's investigation of Plaintiff's claim. Plaintiff agrees it was reasonable for Safeco to request and require his prior medical records. (SOF ¶ 33). When Plaintiff finally, over two years following the Accident, provided some current medical records, Safeco immediately reviewed the same and determined, based on the information provided, that Plaintiff had been adequately compensated by Koch's $25,000.00 liability insurance. (SOF ¶ 51). In response, Plaintiff refused to produce certain missing medical records. (SOF ¶¶ 48-49). Safeco replied by requesting an IME, which was reasonable; remarkably, however, Plaintiff delayed the eventual IME by commencing this action. (SOF ¶¶ 23, 50, 54-55). Finally, Plaintiff concedes that his degenerative neck and shoulder conditions were not related to the Accident and are not covered by the Policy. (SOF ¶¶ 11, 13-16, 66-67). Thus, it was reasonable for Safeco not to attribute their cause to the Accident.

Safeco's investigation and actions were reasonable and supported by fact. Accordingly, Safeco respectfully submits that summary judgment in its favor on Plaintiff's bad faith claim is proper as a matter of law.

### D.    Safeco's Conduct was not the Direct Cause of Plaintiff's Injury.

Where "there is no competent evidence from which a jury could reasonably find a causal nexus between the act and the injury," the question of proximate cause may be determined by the court. *Gillham v. Lake Country Raceway*, 24 P.3d 858, 860 (Okla. 2001). With respect to his damages, Plaintiff filed his lawsuit because he feels he should be compensated and that he believes someone was dragging their feet. (SOF ¶ 58). Plaintiff now agrees that Safeco was prompt and diligent in trying to obtain information from his attorney, who was largely non-responsive. (SOF

¶¶ 29-56, 58-59).  Plaintiff is not seeking any damages related to his degenerative back and neck conditions.  (SOF ¶ 13-16).  Plaintiff has finished treating for his left wrist.  (SOF ¶ 12).  Concerning his left wrist, Plaintiff also concedes that Safeco was not the cause of this injury.  (SOF ¶ 69).  Plaintiff has not incurred any out-of-pocket expense related to the Accident.  (*Id*.).  Plaintiff has not submitted any other evidence concerning claimed damages directly attributable to Safeco.  Simply put, Plaintiff has not suffered *any* damages as a result of Safeco's conduct, a required element of his bad faith claim.  Safeco respectfully submits that summary judgment in its favor is proper.

**III.**     **Summary Judgment in Favor of Safeco on the Issue of Punitive Damages is Proper.**

Safeco respectfully submits that summary judgment on Plaintiff's claim for punitive damages is proper.  Even where there is evidence to support the recovery of actual damages in a bad faith action against an insurer, which there is not here, submission of the issue of punitive damages to a jury may be improper.  *Willis*, 42 F.3d at 614-15 (citing *McLaughlin v. National Benefit Life Ins. Co.*, 772 P.2d 383, 385, 387, 389 (Okla. 1988)).  Punitive damages do not, *ipso facto*, follow from *every* breach of the duty of good faith and fair dealing.  *Id*. (citing *McLaughlin*, 772 P.2d at 385).  "Under Oklahoma law, punitive damages may be awarded in addition to actual or compensatory damages *only* upon proof that a defendant 'has been guilty of conduct evincing a wanton or reckless disregard for the rights of another, oppression, fraud or malice, actual or presumed . . . .'" *Id*. (citing OKLA. STAT. tit. 23, § 9(A)) (emphasis added).

In *McLaughlin*, the Oklahoma Supreme Court affirmed the trial court's demurrer for the defendants on the punitive damages claim in a bad faith action concerning a life insurance policy.  772 P.2d at 389.  There, as is the situation in this present action, the undisputed evidence demonstrated a legitimate controversy as to the amount the insureds claimed they were owed.  *Id.*

24

The Supreme Court explained, "[i]n the absence of evidence to show that [the insurer's] actions were tainted by oppression, fraud, malice or gross negligence there was no basis for submission of the punitive damage issue to the jury." *Id.*

Here, there is no evidence to support the submission of the question of punitive damages to the jury. Safeco consistently and repeatedly requested information from Plaintiff's attorney to evaluate Plaintiff's claim. As Plaintiff's counsel began to finally supply some information, Safeco immediately evaluated Plaintiff's UIM claim and determined, based on the information it had obtained, that Plaintiff had been fully compensated under Koch's liability policy payment of $25,000.00. (SOF ¶¶ 29-56, 58-59). Safeco's determination is further supported by the fact that Plaintiff—after paying all of his medical bills *and* his attorneys—pocketed $13,000.00 of the money paid by Koch's insurer. (SOF ¶¶ 60-65). Plaintiff has not presented any evidence of acts which were intentionally wrongful, oppressive, or fraudulent, and there is no basis for submission of the punitive damages issue to a trier of fact. Safeco respectfully submits it is entitled to summary judgment on Plaintiff's claim for punitive damages.

## CONCLUSION

For the foregoing reasons, Defendant Safeco Insurance Company of America respectfully requests that the Court enter judgment as a matter of law in its favor and against Plaintiff on his claims of breach of contract, breach of the duty of good faith and fair dealing, and request for punitive damages.

Respectfully submitted,

*s/William W. O'Connor*

William W. O'Connor, OBA No. 13200
Jerrick L. Irby, OBA No. 30876
Margo E. Shipley, OBA No. 32118
**HALL, ESTILL, HARDWICK, GABLE,
GOLDEN & NELSON, P.C.**
320 South Boston Avenue, Suite 200
Tulsa, OK  74103-3706
Telephone: (918) 594-0400
Facsimile: (918) 594-0505
boconnor@hallestill.com
jirby@hallestill.com
mshipley@hallestill.com

**ATTORNEYS FOR DEFENDANT,
SAFECO INSURANCE COMPANY OF
AMERICA**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 5th day of December, 2019, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of Notice of Electronic Filing to the following ECF registrants:

Patrick W. Wandres
Brandy L. Wandres
Nick Larby

**ATTORNEYS FOR PLAINTIFF**

*s/William W. O'Connor*
William W. O'Connor