# EXHIBIT 7

*Diane L. Luther*
*6600 Acorn Drive*
*Oklahoma City, OK  73151*
*(405)830-3014*
*dianeluther@hotmail.com*

October 24, 2019

Bill O'Connor
Hall Estill, Hardwick, Gable, Golden & Nelson
320 S. Boston, Suite 200
Tulsa, OK  74103

RE:  Perry v. SAFECO

Dear Mr. O'Connor:

I have been retained by your firm to review the claims handling at issue in the above-styled case. I have been a licensed adjuster in the State of Oklahoma since 1981. I am approved to teach adjuster's continuing education by the Oklahoma Insurance Commissioner. I currently teach adjuster's and agent's continuing education courses at Francis Tuttle Technology Center and have done so for fourteen years.  I have testified as a consultant in both State and Federal Court for both Plaintiffs and Defendants. A Curriculum Vitae and a list of cases I have testified in over the past four years is included with this report. I have not authored any publications. I do not know what, if any, exhibits I would use at trial; however, I will supplement this report if necessary. I charge $250.00 per hour for all services.

In preparation for my opinions, I have reviewed the following documents:  Plaintiff 1st Amended Petition, SAFECO Answer, Agreed Protective Order, Scheduling Order, SAFECO Initial Disclosures, Plaintiff Initial Disclosures, SAFECO 001-1532, AAC001-003,BMC001-36, CORE001-42, EPP001-002,GRDA001-575, HHC001-011, HHC001-018,RPT001-006, SFH001-059, TOC001-41, UPC001-072, SAFECO1533-1965, Perry001-344, Liability file, Deposition of James R. Perry with exhibits, Danielle Lucas, John Lenich, Eric Wagner, IME Report of Dr. Jabbour and photographs of the insured vehicle.

Based on my review of the above documents I have formed the following opinions:

This lawsuit arises out of a rear-end automobile accident that occurred on February 23, 2016 wherein Mr. Perry alleges he received injuries, primarily to his left wrist, although,

1

initially his lawyer made claims for injuries to his left shoulder and neck. Mr. Perry's vehicle did not sustain any damage and no police report was made. The vehicle that hit him did sustain damage from colliding with the trailer hitch on the rear of the Perry vehicle. The tortfeasor had a $25,000 liability policy and Mr. Perry has a $50,000 Uninsured/Underinsured Motorist policy issued by SAFECO. There is no Medical Payments Coverage.

Mr. Perry went to the Emergency Room three days after the accident complaining of swelling in his left hand beginning on the third day after the accident. He was referred to his primary care physician and received a diagnosis of left wrist sprain. The X-Rays revealed no fracture but did note mild degenerative changes. No mention was made of neck or shoulder pain. Mr. Perry saw a chiropractor in April and again saw his primary care physician in May. For the first time since the accident almost three months earlier and after having been previously examined by an ER doctor, his primary care doctor and a chiropractor, Mr. Perry first complained of neck pain related to the accident. In July, he underwent left carpal tunnel surgery. In August, he retained an attorney. In August, he went to see a neurosurgeon with complaints of neck and left clavicle pain which is the first mention of the shoulder issue in the seven and a half months since the accident. He was prescribed physical therapy, of which he only did one session and was told that surgical intervention wasn't necessary because he had a degenerative condition. There was no correlation of the shoulder complaints with the accident other than Mr. Perry's history of onset which, as previously noted, was not reported until this visit, seven months after the accident. He was released to full job duties in early September and released from care on his wrist in early October. The office notes state the doctor could not be happier with the results of his wrist surgery, except for stiffness in the ring finger.

Regarding the neck and shoulder problems, Mr. Perry agreed in his deposition that those conditions were degenerative as discussed by Dr. Jabbour in his IME report and not associated with the accident. Essentially, Mr. Perry wants additional compensation for his wrist, which he believes was injured in the accident and that all of the problems he's had and continues to have with his wrist are because of the accident. Mr. Perry admits to doing tasks around his acreage, including digging, using a chain saw and riding his motorcycle, all of which currently aggravate his pain level in his wrist. Further, Mr. Perry has been a machinery maintenance operator for thirty years for Grand River Dam Authority. Given the fact that Mr. Perry did not report a neck problem to a healthcare provider until two months after the accident, did not report a shoulder problem to a healthcare provider until seven months after the accident and that his daily work and recreational life consists of very physical activities, there are legitimate questions as to the causation of the wrist, shoulder and neck injuries.

2

Mr. Perry is claiming $27,948.34 in past and future medical. which includes some mileage and $2,500.00 in lost wages as well as pain and suffering. He acknowledged he has been paid the $25,000 by the tortfeasor and that he personally received about $13,000. The amounts legally compensable for medical bills under Oklahoma law are amounts actually paid to healthcare providers. Based on the production from Global Health, the amount paid for medical bills associated with this accident was $6,578. I would not allow the charges for the neurosurgical evaluation or physical therapy as his neck and shoulder issues were not reported until months after the accident.

Initially, Mr. Perry believed that SAFECO was "dragging its feet" because it hasn't paid him his policy limit and the delay was part of his reasoning for filing the lawsuit. After being shown, in his deposition, that SAFECO had continuously and repeatedly been in contact with his lawyer requesting information, and how months would go by without a response as well as a lack of cooperation, including the wrong birth date on Mr. Perry's Medical Authorization, Mr. Perry conceded that SAFECO had not been "dragging its feet". It appears, based on his deposition testimony, that his claim that SAFECO delayed the adjustment of his claim is no longer an issue.

At the time the lawsuit was filed in September of 2018, SAFECO was still trying to obtain Mr. Perry's past medical records to investigate his wrist issue since there was no damage done to the vehicle he was driving. Additionally, not until October of 2017, a year and a half after the accident, did Mr. Perry give SAFECO a recorded statement. SAFECO did not believe the claim value exceeded the tortfeasor's $25,000 limit based on the information it had and was still trying to gather information regarding his prior medical records when the lawsuit was filed.

There appears to be a legitimate dispute as to the value of Mr. Perry's claims for injuries to his wrist. Mr. Perry did not present for medical care until three days after the accident and testified his wrist did not begin to swell until the third day. The initial x-rays showed mild degenerative changes in the wrist. Mr. Perry's testimony demonstrates he has been physically active, including his daily work activities, which require extensive and repetitive use of his wrist. Mr. Perry was diagnosed with carpal tunnel syndrome which typically is caused by repetitive and long-term use which certainly fits Mr. Perry's profile. Based on my experience with personally handling carpal tunnel syndrome claims and my work as a consultant, I believe that rarely is carpal tunnel syndrome caused by acute trauma. Based on my review of the medical records, no healthcare provider has stated the automobile accident caused the carpal tunnel syndrome or that the surgery was related to the car accident. While it is possible that Mr. Perry aggravated an underlying pre-existing carpal tunnel left wrist condition, a reasonable value of his claim for any aggravation is well within the underlying $25,000 tortfeasor limits. Additionally, if an evaluation included the carpal tunnel surgery and the time off work, the medical which would be owed (as paid by Global Health) would be $6,578 so if the evaluation included

3

an additional $2,500 in lost wages, a total of $9,000 in special damages would be owed. The unliquidated damages or general damages for pain and suffering, could be legitimately disputed at anything above the remaining $16,000 in policy coverage under the tortfeasor's policy. Any costs for diagnostic or treatment on his neck or shoulder would not be considered compensable damages, legally recoverable due to the accident and therefore, not covered under the UIM policy given there is no evidence that the accident caused any injury to his spine or shoulder.

I recently reviewed the liability claim file which was produced by SAFECO since this was a double insured claim. I also reviewed the deposition of the UIM adjuster and the liability claim adjuster. While I don't understand what, if any, criticisms Plaintiff has regarding the double insured issue, I did not see anything that was a violation of insurance industry standards regarding communications between the two adjusters or in the claim files. Mr. Perry's lawyer refused to disclose the amount of medical Perry's insurance actually paid to the healthcare providers, which is what is compensable under Oklahoma law. However; there is a lien negotiation between Mr. Perry's attorney and the attorney for Global Health. In that agreement, Global Health agreed to accept $3,548.82 as the discounted amount for repayment by Perry, of its $6,578 in payments to the healthcare providers. It looks like the liability adjuster allowed $9,700 for medical which is more than what was allowed in the UIM file, but also contains treatment for the neck, back and shoulder and appears to be more than what Perry's insurance paid. Of note, Plaintiff's demand on the liability file was $200,000 and included the previously alleged neck, back and shoulder injuries including a rotator cuff tear. Those injuries were considered by the liability adjuster when he decided to pay the $25,000 policy limit. (We now know the neck, back and shoulder were not related to this accident.) Because the liability file decided to pay the $25,000 policy limit, based on the previously mentioned facts, is not an admission, by SAFECO, that there is an underinsured motorist claim given the fact that the liquidated damages were well within the liability coverage. That would leave the remaining general damages at issue and subject to legitimate arguments as to the value based on the medical records, Mr. Perry's recorded statement and subsequent deposition which reveal no causal relationship for the back, neck and shoulder injuries initially alleged.

Based on my review of the previously identified material, I believe that SAFECO handled Mr. Perry's claim within acceptable insurance industry standards. SAFECO stayed in constant contact with Mr. Perry's lawyer and diligently requested documents and information to evaluate the claim. As shown in Mr. Perry's deposition, Mr. Perry's lawyers were, at times, not responsive, there was confusion regarding a birth date on a Medical Authorization and refused to assist SAFECO in obtaining additional documents. As such, even Mr. Perry agreed that SAFECO was not "dragging its feet." SAFECO properly requested prior medical records on Mr. Perry to evaluate the extent of the

4

damages he is claiming on his wrist. Aggravations of pre-existing conditions are compensable; however, in order to determine what extent the automobile accident played in the ultimate treatment and lingering issues Mr. Perry is claiming to his wrist, SAFECO needed to investigate any prior complaints or treatment. The insured is required by the insurance policy to cooperate in the investigation and provide a Medical Authorization. Further, as stated previously, the legally recoverable medical bills are around $6,578 not $27,000. Even if the wrist injury is fully attributed to the automobile accident and not merely an aggravation, the only items not fully liquidated in the settlement with the tortfeasor would be the general damages Mr. Perry is claiming which, based on his testimony, are subject to legitimate differences. A legitimate dispute is not bad faith. SAFECO acted within acceptable insurance industry standards in its handling of this claim.

I will supplement my report, if necessary, as discovery is ongoing.

Sincerely,

*Diane L. Luther*

Diane L. Luther, SCLA

# CURRICULUM VITAE

DIANE L. LUTHER
6600 ACORN DRIVE.
OKLAHOMA CITY, OK 73151
(405)-830-3014
e-mail: dianeluther@hotmail.com

EDUCATION:

High School: Putnam City West, Oklahoma City, OK
College: University of Central Oklahoma, Edmond, OK; Oklahoma Christian College, Edmond, Ok; Oklahoma City Community College, Oklahoma City, OK

PROFESSIONAL:

February 1999 to present: Self-employed consulting business consisting of consulting with attorneys and insurance companies on various aspects of claims handling including testifying in court. I have consulted on and or testified in cases involving commercial lines, workers compensation, personal lines, accident/health, life insurance, long-term and short-term disability, specified benefit policies and warranty claims. I am approved by the Insurance Commissioner's Office to teach adjuster and agent continuing education. I have been an insurance continuing education instructor at Francis Tuttle since December 2000.

January 1996 to January 1999: C.L. Frates Company., Oklahoma City, Oklahoma; Medical Malpractice Claim Specialist for Physicians Liability Insurance Company. Managed and directed litigation, investigated non-litigation claims, attended trials, settlement conferences and mediations.   I reported all cases to PLICO Board of Directors.

December 1992 to January 1996: American States Insurance Company, Oklahoma City, OK. I performed multi-line adjusting duties including commercial and personal lines auto, general liability, property, bonds and worker's compensation as well as some professional liability coverage. I worked storm duty, traveling to various locations and adjusted property, auto, equipment and boating storm losses. Additionally, I supervised litigation cases and I served as an arbitrator through Arbitration Forums, Inc. I received the Senior Claim Law Associate (SCLA) professional designation by completing and mastering the educational courses which were required.

April 1991 to December 1992: Maryland Insurance Group, Oklahoma City, Oklahoma. Sr. Claim Representative. Multi-line adjusting of Oklahoma and Arkansas claims.

1

Heavy emphasis on commercial and personal lines casualty litigation cases including coverage issues, large damage cases, investigation and evaluation.

August 1989 to November 1991: Naval and Marine Corps Appellate Review Activity, United States Naval Reserves; Legal assistant to defense counsel for unit which handled court martial appeals.

May 1980 to April 1991: St. Paul Fire & Marine Insurance Company. I adjusted various types of claims over the years, primarily first party commercial and personal lines property and auto related claims and workers compensation.

Work Related Education and Teaching:
Litigation Update for Insurance Professionals, Instructor 2019
How Insurance Companies Pay Life Insurance Claims, LOMA, 2018
Fiduciary Duty: Risk Management in a Litigious Society, Bricker, 2018
Oklahoma Regulatory Update, Bricker, 2018
Trends in Professional Liability, Bricker 2018
Consumer Expectations: Avoiding Unnecessary Litigation, Bricker, 2018
Seismicity 2.0: Oklahoma and Earthquakes, Bricker, 2018
Modern Catastrophes, Mother Nature or Manmade, Bricker, 2018
Legal Environment and Professional Responsibility, FT, 2018
Litigation Update, FT, 2018
CE Courses Adjusters, Agents, Litigation Update, Francis Tuttle, Instructor 2017/18

Earthquake CE, Ethics CE, Francis Tuttle, 2016
General CE, UM/UIM, Agents E&O, Life Insurance Claims, Instructor 2016
Continuing Education Course for Adjusters & Agents, Francis Tuttle, 2014/15, Instructor
Civil, Commercial & Employment Mediation Training, The Mediation Institute, 2013
Guest Speaker, Mid Continent Casualty Insurance Company, 2013
Litigation Updates for Agents and Adjusters, 2013, Instructor
Ethics & Legislative Update, Securities Fraud, 2012, Instructor
Securities Fraud, 2012
Workers Compensation CE, Legislative Update, Ethics, 2011-2012
Ethics and Legislative Update, Instructor, Francis Tuttle, 2011-2012
Claims Negotiation, Instructor, Francis Tuttle, 2011-2012,
Legal Environment Update, Instructor, Francis Tuttle, 2011-2012
Workers Compensation CE, Legislative Update, Ethics, 2010
Best Practices & Good Faith Claims Handling, Instructor, Francis Tuttle, 2010
Claims Investigation and Legal Considerations, Instructor, Francis Tuttle, 2010
Ethics and State Law Compliance, Instructor, Francis Tuttle, 2010
Presenter, Oklahoma Bar Association CLE, 2009
Presenter, Oklahoma Private Investigators Association, 2009
Workers Compensation Bad Faith in Oklahoma, Instructor, Francis Tuttle, 2009
Guest Speaker, Mid Continent Insurance Company Managers Conference, 2008
Primary/Excess Insurance, Instructor, Francis Tuttle, 2008
Auto Claims Handling Update, Instructor, Francis Tuttle 2007

2

Property Claims Handling Update, Instructor, Francis Tuttle 2007
Guest Participant, Trial Masters Attorney Continuing Education, 2006
Characteristics of an Exceptional Claims Adjuster, Francis Tuttle 2006
Cultural Differences & Human Relations in the Claims Environment, Francis Tuttle 2006
Guest Speaker, Mid Continent Insurance Company, 2005
Negotiation Overview, Instructor, Francis Tuttle, 2005
Current Trends in Claims Handling, Instructor, Francis Tuttle 2004
Guest Speaker, Okla. City Claims Assn. March 2004
Guest Speaker, Okla. State Claims Assn. Annual Conference 2003
Property Claims Litigation & Mold Investigation, Instructor, Francis Tuttle, 2003

Claims Negotiation & Mediation Strategies, Instructor, Francis Tuttle 2003
Oklahoma Automobile Insurance Law; Instructor, Francis Tuttle 2002
Bad Faith Awareness; Instructor, Francis Tuttle 2002
Litigation Awareness/Martin v. Dairyland, Francis Tuttle 2001
Dispute Resolution and Claim Management; Francis Tuttle 2000
Oklahoma Claims Association Continuing Education, Birch v. Allstate, UM Coverage and Claims Handling, Bad Faith; 1999
Commercial General Auto Policy; C.L. Frates, 1998
Workers Compensation Policy; C.L. Frates, 1997
Associate in Claims, The Claims Environment, 1996
Senior Claim Law Associate Professional Designation, 1995
Accident Reconstruction; Metro-Tech 1995/96
Injury Evaluation; American States Insurance Company, 1995/96
Litigation Management, Negotiation, Bad Faith Issues in Oklahoma & Arkansas; Maryland Insurance Group 1990-91
Oklahoma/Arkansas Workers Compensation, 1991
CPCU/IIA General Insurance Course, 1982
Auto Estimating School, Property Estimating School, Specialized training in auto, property, liability, workers compensation including basic training issues such as recorded statements, scene investigation, medical record interpretation and review, customer service, safety, file load management and current trends in the industry.

Naval Reserve Management School, One Minute Manager, USNR 1990
Paralegal Certificate, 1990
Human Anatomy, Physiology, Medical Terminology, Surgical Technology; Oklahoma City Community College, 1979

Professional Associations:

Society of Claim Law Associates

Licenses:

Oklahoma Insurance Commission; Adjuster licensed for property, Fire, Marine, Casualty, Surety, Automobile and Worker's Compensation. 1981 to present
Arkansas: 2010-2013

3

## DEPOSITION AND TRIAL TESTIMONY (4yrs)

03-15 (Depo) Roberts v. SAFECO, B. O'Connor, S. Fulmer

05-15 (Trial) Beccera v. Farmers, J. Marr, M. Duncan

11-15 (Depo) Payne v. Republic, J. Zelbtz, L. Leffel

2-16 (Depo) Hawke v. State Farm, R. Whitten, D. Andrews

7-16 (Depo) Thornton v. Grinnell, D. Hoehner, J. Carson

7-16 (Depo) First Enterprise Bank v. Lloyds of London, M. Walsh, A. Kirk

9-16 (Depo)  Walker v. Guide One, C. Weddle, G. Givens

3-17 (Trial)  Payne v. Republic, J. Zelbtz, L.Leffel

7-17 (Depo) Magallan v. Zurich, J. White, M.Masterson

11-17 (Depo) State Farm v. American Waste Disposal, T. Rucker, B. Kershaw

8-18 (Depo) Mays v. Liberty Mutual, B. O'Connor, R. Mohr

9-18 (Depo) Folsom v. Century Life Assurance Company, J. White, J. Blassingame

1-19 (Depo) Trade Winds East v. UNIC, R. Butler, M. Esmond

5-19 (Trial) Trade Winds East v. UNIC, R. Butler, M. Esmond

5-19 (Depo) Moreno v. State Farm, K. McGuire, M. Brewer

6-19 (Depo) Hamilton v. Mutual of Omaha, M. Bialick, E, Kersting

6-19 (Depo) Deason v. State Farm, K. McGuire, M.Bewer

1