**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **JAMES PERRY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 18-CV-539-TCK-FHM** |
| ) | |
| **SAFECO INSURANCE COMPANY** ) | |
| **OF AMERICA,** ) | |
| ) | |
| **Defendant.** ) | |

## OPINION AND ORDER

Before the court is the Motion to Strike the Expert Report of Diane Luther filed by the
Plaintiff, James Perry ("Perry"). Doc. 71.  Perry requests the court strike the expert report of Diane
Luther ("Luther") and prevent her from testifying at trial. Defendant Safeco Insurance Company
of America ("Safeco") has filed a response opposing the motion. Doc. 77.

### I. STANDARD OF REVIEW

Fed.R.Civ.P. 26(a)(2) requires that an expert report contain (i) a complete statement of all
opinions the witness will express and the basis and reasons for them; (ii) the facts or data
considered by the witness in forming them; (iii) any exhibits that will be used to summarize or
support them; (iv) the witness's qualifications, including a list of all publications authored in the
previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness
testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid
for the study and testimony in the case. "The requirements of Rule 26(a) are mandatory as to any
expert retained to testify." *Palmer v. Rhodes Mach.*, 187 F.R.D. 653, 656 (N.D. Okla. July 19,
1999) (quoting *Nguyen v. IBP, Inc.*, 162 F.R.D. 675, 681 (D. Kan. 1995)). "If the expert is unable
or unwilling to make the disclosures, he should be excluded as a possibility for retention as an
expert witness in a case." *Id*. Indeed, if an expert fails to provide the information identified in Rule
26(a), "the party is not allowed to use that information or witness to supply evidence on a motion,

at a hearing, or at a trial, unless the failure was substantially justified or harmless." Fed.R.Civ.P. 37(c)(1).

Further, "Rule 702 of the Federal Rules of Evidence provides: A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." *See Lippe v. Howard*, 287 F.Supp.3d 1271, 1277 (W.D. Okla. Feb. 14, 2018). "When an objection to an expert's testimony is raised, the court must perform *Daubert* gatekeeper duties before the jury is permitted to hear the evidence." *Bright v. Ohio Nat'l Life Assur. Corp.*, 2013 WL 12327512, at *1 (N.D. Okla. Jan. 9, 2013) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999)).

"In considering whether an expert opinion is admissible, the Court performs a two-step analysis." *Lippe*, at 1277. "First, the Court determines whether the expert is qualified by knowledge, skill, experience, training or education to render the opinion." *Id*. at 1277-78. "If so qualified, the Court must then determine whether the expert's opinion is reliable and relevant under the principles set forth in *Daubert* and *Kumho Tire*, in that it will assist the trier of fact." *Id*. at 1278; *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). Notably, when the testimony of an expert is challenged, "the proponent of the testimony bears the burden of proving by a preponderance of the evidence that its witness's opinions are both relevant and reliable." *Kumho*, 526 U.S. at 152. In summary, the Court must admit expert testimony where the following four conditions are met: (1) it is helpful to the trier of fact, (2) it is based on sufficient facts, (3) it is the product of reliable principles and methods, and (4) the expert reliably applied the principles and methods to the case.

The Court's inquiry is "a flexible one" but "[t]he focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 594-

95. "At a minimum, [the expert] should describe the method he used in reaching, and the data supporting, his determination. The Court cannot rely on an expert's mere assurance that the methodology and data are reliable." *Alexander v. Smith & Nephew, P.L.C.*, 98 F.Supp.2d 1299, 1305 (N.D. Okla. June 5, 2000). Finally, where "expert testimony is offered on an issue that a jury is capable of assessing for itself, it is plainly within the trial court's discretion to rule that testimony inadmissible because it would not even marginally assist the trier of fact." *Thompson v. State Farm Fire and Cas. Co.*, 34 F.3d 932, 941 (10th Cir.1994) (internal quotations omitted).

## II. Material Facts

On February 23, 2016, Plaintiff was rear-ended by Gerald Koch ("Koch"). Plaintiff's vehicle did not sustain any damage; no police report was made, and both Plaintiff and Koch drove their respective vehicles away from the scene. Plaintiff's wife was a passenger in the vehicle and sustained no injuries. Three days after the accident, Plaintiff reported to the emergency room at Hillcrest Hospital in Claremore, Oklahoma, complaining of pain in his left wrist. While Plaintiff had some slight swelling of his hand, no fracture or other issues were noted and he was released with a prescription for Tylenol. Plaintiff followed up with his primary care physician on February 29, 2016, who diagnosed him with a wrist sprain. Plaintiff next saw his primary care physician on March 30, 2016, where additional x-rays and an EMG were obtained. Plaintiff's primary care physician noted mild degenerative changes in Plaintiff's wrist, but no fracture.

Plaintiff was subsequently diagnosed with degenerative back and neck conditions and carpel tunnel syndrome in his left hand. Plaintiff concedes that none of his degenerative back and neck conditions were caused by the accident. Plaintiff maintains, however, that the accident caused carpel tunnel syndrome, and trigger finger in his left hand. Plaintiff underwent a left carpal tunnel release and left trigger finger surgery on July 28, 2016 and has finished treatment.

At the time of the accident, Koch had a policy with Safeco that provided liability limits of $25,000.00 per person. Plaintiff made a claim against Koch's Safeco liability policy, which ultimately resulted in payment to Plaintiff of policy limits. Plaintiff also had an automobile

insurance policy with Safeco, which provided uninsured/underinsured ("UIM") coverage of $50,000.00 per person.

Approximately six months after the accident, Plaintiff notified Safeco of the accident and a possible UIM claim. Plaintiff hired an attorney to represent him in his insurance dealings; Safeco had no direct interaction with Plaintiff. For over a year, Plaintiff's counsel delayed providing requested information necessary to evaluate Plaintiff's claim, including a medical authorization. Further, the medical authorization that Plaintiff belatedly completed and submitted to Safeco contained a wrong date of birth which further impeded Safeco's investigation. On April 12, 2018, over two years following the accident, Plaintiff's counsel finally provided Safeco with an updated medical release and enclosed Plaintiff's post-accident medical bills and records.

Safeco immediately evaluated Plaintiff's UIM claim and determined, based upon the information it was able to obtain, that Plaintiff had been fairly compensated by payment of Koch's $25,000.00 liability policy. From the $25,000.00 Plaintiff was paid by Koch's carrier, Plaintiff used $12,000.00 to pay all his medical bills and attorneys' fees in full. Plaintiff retained the remaining balance of approximately $13,000.00. Therefore, Safeco contends UIM coverage was never triggered as Plaintiff was fully compensated under Koch's liability policy.

Plaintiff contends that all his post-accident medical costs are attributable to the subject accident, and thus his UIM coverage with Safeco is triggered.

**III. Analysis**

In reaching its *Daubert* determination, the Court has reviewed the written report of Safeco's proposed expert in detail and concludes her report should be stricken and her testimony may not be admitted. Most of Luther's expert opinion is offered on the issue of whether Safeco breached its duty to deal fairly and in good faith with its insured. The court, however, and not an expert witness, is responsible for deciding issues of law. "Our legal system reserves to the trial judge the role of deciding the law for the benefit of the jury." *Askanase v. Fajito*, 130 F.3d 657, 673 (5th Cir. 1997) (citing with approval, *Specht v. Jensen*, 853 F.2d 805 (10th Cir. 1988), cert

denied, 488 U.S. 1008 (1989). "[I]f an expert witness was allowed to testify to legal questions, each party would find an expert who would state the law in the light most favorable to its position. Such differing opinions as to what the law is would only confuse the jury." *Id.*

Luther's opinion also impermissibly invades the province of the jury. The jury is capable of assessing these issues for itself, the testimony would not assist the trier of fact, would merely tell the jury what result to reach, and would be a needless presentation. As noted by the Tenth Circuit, "where expert testimony is offered on an issue that a jury is capable of assessing for itself, it is plainly within the trial court's discretion to rule that testimony inadmissible because it would not even marginally 'assist the trier of fact,' and must be viewed as a 'needless presentation' (Fed.R.Civ.P. 403)…" *Thompson v. State Farm Fire and Cas.Co.*, 34 F.3d 932, 941 (10th Cir. 1994). "Although any witness may offer an opinion as to an ultimate issue to be decided by a jury, this opinion should not unduly invade the province of the jury when the assistance of the witness is unnecessary." *Sims v. Great American Life Ins. Co.*, 469 F.3d 870, 889 (10th Cir. 2006); *United States v. Dazey*, 403 F.3d 1147, 1172 (10th Cir. 2005). "Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach…." *Sims*, 469 F.3d at 889, *citing* Fed.R.Evid. 704 advisory committee's notes. Here, Luther's experience is of a general nature in insurance and the ultimate question of whether Safeco's actions violated its duty of good faith and fair dealing is left to the jury, not to an expert witness. Safeco presents no reason why the fact finder in this case will be unable to make those determinations required to determine whether Defendant acted in bad faith upon proper instructions from the Court. Nor has Safeco shown that Luther's testimony would assist a fact finder in understanding the evidence or determining a fact in issue. *See* Fed. R. Evid. 702(a).

Therefore, the court concludes the testimony offered by Safeco in the form of Luther's expert report is not relevant in that it fails to assist the trier of fact in understanding and determining any fact in issue and it further impermissibly invades the court's role in instructing the jury in

applying that law to the facts at hand.[1] As a result, the expert testimony of Luther fails to meet the test for admissibility of expert testimony under Rule 702 of the Federal Rules of Evidence and the standards set forth by the United States Supreme Court in *Daubert* and *Kuhmo.*[2]

Accordingly, Plaintiff's Motion to Strike the Expert Report of Diane Luther is granted.

**DATED this 11th day of March, 2020.**

TERENCE C. KERN
United States District Judge

---

[1] Having excluded Luther's testimony on these grounds, the Court finds it unnecessary to address Plaintiff's other grounds for exclusion that Luther's opinions are contrary to Oklahoma law and based on unreliable and unsupported assumptions.

[2] This ruling is not intended as a blanket prohibition on the use of experts in insurance litigation. The Court can envision the utility of expert testimony under circumstances where the technical or highly specialized aspects of insurance industry practices are at issue. The fact of this case, however, do not fall within that classification.