IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

JAMES PERRY, )
)
      **Plaintiff,** )
)
v. ) Case No. 18-CV-539-TCK-FHM
)
SAFECO INSURANCE COMPANY )
OF AMERICA, )
)
      **Defendant.** )

**OPINION AND ORDER**

Before the court is the Motion to Preclude Testimony and Expert Report of Brian Chalkin, D.O. ("Dr. Chalkin") filed by Defendant Safeco Insurance Company of America ("Safeco"). Doc. 68. Safeco requests the Court strike the expert report of Dr. Chalkin and prevent Dr. Chalkin from testifying at trial. Plaintiff has filed a response opposing the motion. Doc. 78.

**I. STANDARD OF REVIEW**

Fed.R.Civ.P. 26(a)(2) requires that an expert report contain (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case. "The requirements of Rule 26(a) are mandatory as to any expert retained to testify." *Palmer v. Rhodes Mach.*, 187 F.R.D. 653, 656 (N.D. Okla. July 19, 1999) (quoting *Nguyen v. IBP, Inc.*, 162 F.R.D. 675, 681 (D. Kan. 1995)). "If the expert is unable or unwilling to make the disclosures, he should be excluded as a possibility for retention as an expert witness in a case." *Id*. Indeed, if an expert fails to provide the information identified in Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion,

at a hearing, or at a trial, unless the failure was substantially justified or harmless." Fed.R.Civ.P. 37(c)(1).

Further, "Rule 702 of the Federal Rules of Evidence provides: A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." *See Lippe v. Howard*, 287 F.Supp.3d 1271, 1277 (W.D. Okla. Feb. 14, 2018). "When an objection to an expert's testimony is raised, the court must perform *Daubert* gatekeeper duties before the jury is permitted to hear the evidence." *Bright v. Ohio Nat'l Life Assur. Corp.*, 2013 WL 12327512, at *1 (N.D. Okla. Jan. 9, 2013) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999)).

"In considering whether an expert opinion is admissible, the Court performs a two-step analysis." *Lippe*, at 1277. "First, the Court determines whether the expert is qualified by knowledge, skill, experience, training or education to render the opinion." *Id*. at 1277-78. "If so qualified, the Court must then determine whether the expert's opinion is reliable and relevant under the principles set forth in *Daubert* and *Kumho Tire*, in that it will assist the trier of fact." *Id*. at 1278; *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). Notably, when the testimony of an expert is challenged, "the proponent of the testimony bears the burden of proving by a preponderance of the evidence that its witness's opinions are both relevant and reliable." *Kumho*, 526 U.S. at 152. In summary, the Court must admit expert testimony where the following four conditions are met: (1) it is helpful to the trier of fact, (2) it is based on sufficient facts, (3) it is the product of reliable principles and methods, and (4) the expert reliably applied the principles and methods to the case.

The Court's inquiry is "a flexible one" but "[t]he focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 594-

95. "At a minimum, [the expert] should describe the method he used in reaching, and the data supporting, his determination. The Court cannot rely on an expert's mere assurance that the methodology and data are reliable." *Alexander v. Smith & Nephew, P.L.C.*, 98 F.Supp.2d 1299, 1305 (N.D. Okla. June 5, 2000). Finally, where "expert testimony is offered on an issue that a jury is capable of assessing for itself, it is plainly within the trial court's discretion to rule that testimony inadmissible because it would not even marginally assist the trier of fact." *Thompson v. State Farm Fire and Cas. Co.*, 34 F.3d 932, 941 (10th Cir.1994) (internal quotations omitted).

**II. Material Facts**

On February 23, 2016, Plaintiff was rear-ended by Gerald Koch ("Koch"). Plaintiff's vehicle did not sustain any damage; no police report was made, and both Plaintiff and Koch drove their respective vehicles away from the scene. Plaintiff's wife was a passenger in the vehicle and sustained no injuries. Three days after the accident, Plaintiff reported to the emergency room at Hillcrest Hospital in Claremore, Oklahoma, complaining of pain in his left wrist. While Plaintiff had some slight swelling of his hand, no fracture or other issues were noted, and he was released with a prescription for Tylenol. Plaintiff followed up with his primary care physician on February 29, 2016, who diagnosed him with a wrist sprain. Plaintiff next saw his primary care physician on March 30, 2016, where additional x-rays and an EMG were obtained. Plaintiff's primary care physician noted mild degenerative changes in Plaintiff's wrist, but no fracture.

Plaintiff was subsequently diagnosed with degenerative back and neck conditions and carpel tunnel syndrome in his left hand. Plaintiff concedes that none of his degenerative back and neck conditions were caused by the accident. Plaintiff maintains, however, that the accident caused carpel tunnel syndrome, and trigger finger in his left hand. Plaintiff underwent a left carpal tunnel release and left trigger finger surgery on July 28, 2016 and has finished treatment.

At the time of the accident, Koch had a policy with Safeco that provided liability limits of $25,000.00 per person. Plaintiff made a claim against Koch's Safeco liability policy, which ultimately resulted in payment to Plaintiff of policy limits. Plaintiff also had an automobile

insurance policy with Safeco, which provided uninsured/underinsured ("UIM") coverage of $50,000.00 per person.

Approximately six months after the accident, Plaintiff notified Safeco of the accident and a possible UIM claim. Plaintiff hired an attorney to represent him in his insurance dealings; Safeco had no direct interaction with Plaintiff. For over a year, Plaintiff's counsel delayed providing requested information necessary to evaluate Plaintiff's claim, including a medical authorization. Further, the medical authorization that Plaintiff belatedly completed and submitted to Safeco contained a wrong date of birth which further impeded Safeco's investigation. On April 12, 2018, over two years following the accident, Plaintiff's counsel finally provided Safeco with an updated medical release and enclosed Plaintiff's post-accident medical bills and records.

Safeco immediately evaluated Plaintiff's UIM claim and determined, based upon the information it was able to obtain, that Plaintiff had been fairly compensated by payment of Koch's $25,000.00 liability policy. From the $25,000.00 Plaintiff was paid by Koch's carrier, Plaintiff used $12,000.00 to pay all his medical bills and attorneys' fees in full. Plaintiff retained the remaining balance of approximately $13,000.00. Therefore, Safeco contends UIM coverage was never triggered as Plaintiff was fully compensated under Koch's liability policy.

Plaintiff contends that all his post-accident medical costs are attributable to the subject accident, and thus his UIM coverage with Safeco is triggered. On October 15, 2019, in support of Plaintiff's position that injuries to his hand were a direct result of the accident, Plaintiff designated Dr. Chalkin as an expert by sending Safeco a "Supplemental Response to Defendant's First Set of Interrogatories." Attached to Plaintiff's Supplemental Response was Dr. Chalkin's expert report, dated October 15, 2019, which provides in its totality as follows:

> Today, I was asked to generate a letter regarding causation as it related to Mr. Perry's case. As you know, he was involved in a motor vehicle accident in February 2016. I had a chance to see him in June of 2016 when I diagnosed him with a left carpal tunnel syndrome and a C6 radiculopathy, as well as a trigger finger. He stated that he never had problems with this until the motor vehicle accident. He subsequently underwent a left open carpal tunnel release and a left distal forearm fasciotomy. He responded favorably to those surgeries and

unfortunately still had trouble with his shoulder and neck. He was seen by Dr. Thambuswamy, a neurosurgeon, and I evaluated his shoulder. His shoulder MRI resulted in findings consistent with partial-thickness rotator cuff tear and a type 1 SLAP tear. He had a serologic workup for inflammatory arthropathy, which was negative.

At this time, I can say with confidence that the carpal tunnel syndrome and the trigger finger were related to the motor vehicle accident. I would not be able to comment on his neck, as that is out of my scope of practice, as Dr. Thambuswamy, a neurosurgeon, has seen and evaluated him. As far as the shoulder is concerned, I have not seen him since May of 2017, so I would not be able to comment on whether his shoulder pain or his neck is the primary cause of his problem at this time. The future prognosis of the hand is excellent, and no further treatment of his hand is needed. Therefore, if you have further questions or concerns, please contact me. The patient does not require any further treatment on his hand or medical maintenance therapy on his hand at this time.

Safeco asserts this two-paragraph "report" should be stricken for failure to comply with Fed.R.Civ.P. 26(a)(2)(B), and that Dr. Chalkin should not be permitted to testify at trial. Safeco argues Dr. Chalkin has demonstrated through his report that he is not sufficiently qualified to render his proposed opinion testimony. Further, Safeco contends Dr. Chalkin's opinions are conclusory, unsupported, not grounded in the facts of this case, nor do they result from a cogent methodology.

### III. Analysis

Plaintiff contends Dr. Chalkin is not required to provide an expert report because he "was not retained as an expert in this case, he was not asked to review any new information in providing his summary, and all of his proffered opinions were formed at the time he provided treatment to Plaintiff." (See Plaintiff's Response (Doc. 78 at p. 4). More specifically, Plaintiff's position is that Dr. Chalkin's letter does not need to meet the requirements of Rule 26(a)(2)(B); "Instead," Plaintiff argues, "this Court must determine whether Dr. Chalkin's letter satisfies the disclosure requirements of Rule 26(a)(2)(C)." *Id.* Yet, as documented by Safeco, Plaintiff's past representations belie this position. Plaintiff designated Dr. Chalkin as an expert through a "Supplemental Response to Defendant's First Set of Interrogatories" on October 16, 2019. Plaintiff's Preliminary Witness & Exhibit List, received by counsel for Safeco on March 18, 2019,

describes Dr. Chalkin's anticipated testimony as follows: "Plaintiff's injuries, care and treatment, past and future, damages." Therefore, the Court finds Plaintiff's defense of Dr. Chalkin's letter -- that it need only meet the requirements of Rule 26(a)(2)(C) is disingenuos. Dr. Chalkin was designated as an expert witness who was required to provide a written report that met the standards enumerated in Rule 26(a)(2)(B).

Plaintiff seeks to submit the "expert" testimony and report of Dr. Chalkin to establish that injuries to his hand were caused exclusively by the accident and could not have been preexisting. The Court finds, however, Dr. Chalkin is unqualified to testify as an expert on this issue, and the proffered testimony and "report" are not relevant, reliable, or helpful to the jury.

### A. Dr. Chalkin's Expert "Report" Fails to Meet the Requirements of Fed.R.Civ.P. 26(a)(2)(B)

Dr. Chalkin's "report" fails to meet the base requirements of Fed.R.Civ.P. 26(a)(2)(B). In fact, the report does not meet the first requirement of Rule 26(a)(2)(B) that it contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Rather, Dr. Chalkin provides a single conclusory "opinion" that Plaintiff's "carpal tunnel syndrome and the trigger finger were related to the motor vehicle accident." He fails to provide any basis or reasoning for his opinion, explaining only that he "had a chance to see [Plaintiff] in June of 2016," that he diagnosed carpal tunnel syndrome and trigger finger, and that the surgery on Plaintiff's hand was successful.

Similarly, Dr. Chalkin fails to provide the "facts or data" that he "considered . . . in forming" his opinion. *See* Fed.R.Civ.P. 26(a)(2)(ii). He reveals that his opinion that the motor vehicle accident caused the problems to Plaintiff's hand is actually based on the fact that Plaintiff "stated that he never had problems with this until the motor vehicle accident." Essentially, the expert report Plaintiff advances to support causation was itself based solely on Plaintiff's opinion. "An expert report should provide genuine expertise to support a party's position. Where, as here, an expert report is based solely on a party's opinion, it should be stricken. Plaintiff is not an expert,

and Plaintiff's position alone is inadequate support for an expert opinion." *Alexander v. Smith,* 98 F.Supp.2d 1299, at 1305.

Dr. Chalkin's scant disclosures do not satisfy Fed.R.Civ.P. 26(a)(2). It is not sufficient that an expert report merely set forth the opinions the expert will offer; "it must also describe the reasons and basis for those opinions. Expert reports must include 'how' and 'why' the expert reached a particular result, not just his conclusory opinion. . . . The report is to state 'the testimony the witness is expected to present during direct examination.' *Rule 26 committee note.* Amended Rule 26 envisions an expert report so detailed that 'in many cases the report may eliminate the need for a deposition.'" *Cohlmia v. Ardent Health Services, LLC.,* 254 F.R.D. 426, 430 (N.D. Okla. Aug. 22, 2008). It is evident Dr. Chalkin's two-paragraph report would not "eliminate the need for a deposition."*Id.*

The Court finds Dr. Chalkin failed to comply with Rule 26(a)(2) and such failure was neither "substantially justified" nor "harmless." Dr. Chalkin's expert report is based not on facts or data, but on Plaintiff's position alone. The report is self-serving and highly prejudicial to Safeco and is therefore stricken. *See* Fed.R.Civ.P. 37(c)(1) (if a party fails to provide the information required by Fed.R.Civ.P. 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."); *Cohlmia*, 254 F.R.D. at 433 (granting the defendant's motion to strike); *Aircraft Fueling Sys. v. Southwest Airlines Co.*, 2011 WL 6122627 (N.D. Okla. Dec. 8, 2011) (striking expert report for failure to comply with Fed.R.Civ.P. 26(a)(2)); *Palmer v. Asarco, Inc.,* 510 F. Supp. 2d 519, 528 (N.D. Okla. 2007) ("A party's failure to . . . provide an expert report requires the Court to automatically exclude the testimony unless the violation of Rule 26(a)(2) was justified or was harmless under the circumstances."); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 952-53 (10th Cir. 2002) (court should exclude testimony of expert where report unjustifiably failed to meet requirement of rule unless deficiencies are harmless); *Rhodes Mach.*, 187 F.R.D. at 656 (N.D. Okla. 1999) ("The requirements of Rule 26(a) are mandatory as to any expert retained to testify.

If the expert is unable or unwilling to make the disclosures he should be excluded as a possibility for retention as an expert witness in the case.").

**B**. **Dr. Chalkin Is Not Qualified to Testify or Offer Opinions in This Action.**

This Court must determine whether Dr. Chalkin is qualified "by knowledge, skill, experience, training or education" to render his opinions. *Lippe*, 287 F.Supp.3d, at 1277-78. "[T]he issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer specific questions." *Graves v. Mazda Motor Corp.*, 675 F.Supp.2d 1082, 1092-93 (W.D. Okla. 2009). Further, an expert's qualification should be determined based upon whether "his opinion would rest on substantial foundation and would tend to aid the trier of fact in [its] search for the truth." *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004) (emphasis added); see also Siegel v. Blue Giant Equip. Corp., 2018 WL 5631098, at *1 (N.D. Okla.) ("An expert who possesses knowledge as to a general field but lacks specific knowledge does not necessarily assist the jury.").

In the instant case, Dr. Chalkin is not qualified to testify as an expert; although a licensed physician, he lacks sufficient familiarity with Plaintiff's medical history to allow him to establish the causation of Plaintiff's hand injury with any level of certainty. *See Alexander v. Smith & Nephew, P.L.C.*, 98 F. Supp. 2d 1287, 1293 (N.D. Okla. 2000) ("A blanket qualification for all physicians to testify as to anything medically-related would contravene the Court's gatekeeping responsibilities."). More specifically, "[t]he simple possession of a medical degree is insufficient to qualify a physician to testify as to . . . the medical causation of spine-related ailments." *Id*. at 1292. Certainly, this same concept applies to hand-related ailments. In *Alexander*, the Court acknowledged that this concept is widely accepted, referencing *Whiting v. Boston Edison Co.*, 891 F. Supp. 12, 24 (D. Mass. 1995) ("Just as a lawyer is not by general education and experience qualified to give an expert opinion on every subject of the law, so too a scientist or medical doctor is not presumed to have expert knowledge about every conceivable scientific principle or disease.").

8

Dr. Chalkin opines that he "can say with confidence that the carpal tunnel syndrome and the trigger finger were related to the motor vehicle accident," but fails to explain the source of his confidence, or how he ruled out any number of other causes. Plaintiff testified in his deposition that after high school, he spent eight (8) years maintaining soybean manufacturing equipment for Ralston Purina Company. Plaintiff then spent a year in remote areas of the United States refurbishing radar domes. Plaintiff has spent the last thirty-two (32) years of his career working for the Grand River Dam Authority ("GRDA"), where he has been a cleaner and an operator in a coal-fired facility, and is currently an operator in GRDA's hydro facility. Plaintiff has filed for Workers' Compensation on at least two occasions. Plaintiff's hands are central to the manual labor he has performed over the course of four (4) decades. Indeed, Plaintiff testified that he has worked with his hands over the entirety of his career. Plaintiff's labor-intensive work history in particular is a cause that Dr. Chalkin should have ruled out in reaching his opinion (or at least acknowledged) but he did not.

Dr. Chalkin also doesn't note treating Plaintiff for anything before the accident, which, if he had, could provide some foundation for his opinion that Plaintiff's injuries are related to the car accident. He doesn't even note reviewing any of Plaintiff's past medical records, which, although inconclusive, could show that Plaintiff had not previously complained of problems with his hand. Safeco concedes that Dr. Chalkin is qualified to examine Plaintiff's hand and diagnose carpal tunnel syndrome and trigger finger. However, Safeco contends it does not follow that Dr. Chalkin is qualified to "say with confidence" that the subject motor vehicle accident caused Plaintiff's carpal tunnel and trigger finger. This is an important distinction, and one which illustrates the extent to which Dr. Chalkin in unqualified to testify as an expert in this case. Therefore, the Court finds Dr. Chalkin is precluded from testifying at trial as an expert and his expert report is excluded.

## C. Dr. Chalkin's Testimony Is Not Sufficiently Relevant, Reliable, or Helpful to a Jury.

Dr. Chalkin's testimony is irrelevant, unreliable, and would not be helpful to the trier of fact; it is inadmissible on this ground alone. "At a minimum, Dr. [Chalkin] should describe the method he used in reaching, and the data supporting, his determination." *Alexander v. Smith & Nephew, P.L.C.,* 98 F. Supp. 2d 1287, 1293 (N.D. Okla. 2000). Here, Dr. Chalkin not only fails to "describe" the method employed to reach his conclusion, he fails to identify any method whatsoever. Further, "[i]f any step renders [Dr. Chalkin's] opinion unreliable—either in the choice of methodology or its application—his opinion is inadmissible." *Id.* As noted, Dr. Chalkin does not identify a methodology, and thus certainly does not describe its application, further proving his opinion's irrelevance and unreliability. Instead, he offers an unsupported conclusion that is completely inadequate for an expert report. *See Id*. ("The Court cannot rely on an expert's mere assurance that the methodology and data are reliable" and "does not focus on an expert's conclusions, but on whether his principles and methodology are sound.").

Dr. Chalkin's expert report, dated October 15, 2019, begins: "Today, I was asked to generate a letter regarding causation as it relates to Mr. Perry's case." In other words, Dr. Chalkin's "expert opinion" was reached the same day he was asked by Plaintiff's counsel to opine on causation. Any methodology employed in this limited time frame is not worthy of inclusion in a report that is intended for the jury and cloaked in expertise. Dr. Chalkin's opening sentence also reveals that Plaintiff's counsel did not actually seek an expert report. Instead, Dr. Chalkin was merely "asked to generate a letter." *Id.*

The two-paragraph "letter" concludes "with confidence that the carpal tunnel syndrome and the trigger finger were related to the motor vehicle accident." The remainder of the two-paragraph "letter" consists of (1) the fact that Plaintiff was involved in the accident; (2) the fact that Dr. Chalkin saw Plaintiff afterwards; (3) the fact that Dr. Chalkin diagnosed carpal tunnel syndrome and trigger finger; (4) the fact that Plaintiff said he hadn't had problems before the accident; (5) the fact that Plaintiff had surgery and responded favorably; and (6) that Plaintiff's

future prognosis is "excellent" and "no further treatment of his hand is needed." Dr. Chalkin also clarifies that Plaintiff's neck is "out of [his] scope of practice" and that he cannot opine on Plaintiff's shoulder because he has "not seen him since May of 2017." The report is a conclusion surrounded by unsupported and unhelpful facts.

For the reasons set forth above, Defendant's Motion to Preclude Testimony and Expert Report of Brian Chalkin, D.O. is granted.

**DATED this 11th day of March, 2020.**

TERENCE C. KERN
United States District Judge