# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES PERRY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 18-CV-539-TCK-FHM |
| SAFECO INSURANCE COMPANY OF AMERICA, | ) ) ) ) |
| Defendant. | ) ) |

## OPINION AND ORDER

Before the Court is the Motion for Summary Judgment filed by Defendant Safeco Insurance Company of America ("Safeco") pursuant to Fed.R.Civ.P. 56. Doc. 69. Safeco requests the Court enter summary judgment in its favor on Plaintiff James Perry's ("Plaintiff") claim for breach of contract, breach of the duty of good faith and fair dealing, and request for punitive damages. Plaintiff has filed a response opposing the motion. Doc. 79.

### I. SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Federal Rule of Civil Procedure 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Zamora v. Elite Logistics, Inc.,* 449 F.3d 1106, 1112 (10th Cir. 2006); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). When the moving party has carried its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find

for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)) (citations omitted).

"An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler*, 144 F.3d at 670 (citations omitted). In a bad faith action, a plaintiff may not avoid summary judgment by merely alleging that its insurer breached its duties of good faith and fair dealing. "A jury question arises only where the relevant facts are in dispute or where the undisputed facts permit differing inferences as to the reasonableness and good faith of the insurer's conduct." *Oulds v. Principal Mutual Life Ins. Co.*, 6 F.3d 1431, 1436 (10th Cir. 1993). If the undisputed evidence fails to demonstrate that an insurer acted unreasonably and in bad faith, summary judgment is appropriate. *Id.*; *see also Garnett v. Gov't Emps. Ins. Co.*, 186 P.3d 935, 944 (Okla. 2008).

The Oklahoma Court of Civil Appeals has stated that "before the issue of insurer's alleged bad faith may be submitted to the jury, the Trial Court must first determine, under the facts of the particular case and as a matter of law, whether insurer's conduct may be reasonably perceived as tortious." *City Nat'l Bank & Trust Co. v. Jackson Nat'l Life Ins.*, 804 P.2d 463, 468 (Okla. Civ. App. 1990). "[U]ntil the facts, when construed most favorably against the insurer, have established what might be reasonably perceived as tortious conduct on the part of the insurer, the legal gate to submission of the issue to the jury remains closed." *Id*. at 468-69.

## II. MATERIAL FACTS

On February 23, 2016, Plaintiff was rear-ended by Gerald Koch ("Koch"). Plaintiff's vehicle did not sustain any damage; no police report was made, and both Plaintiff and Koch drove their respective vehicles away from the scene. Plaintiff's wife was a passenger in the vehicle and sustained no injuries. Three days after the accident, Plaintiff reported to the emergency room at Hillcrest Hospital in Claremore, Oklahoma, complaining of pain in his left wrist. While Plaintiff had some slight swelling of his hand, no fracture or other issues were noted, and he was released

2

with a prescription for Tylenol. Plaintiff followed up with his primary care physician on February 29, 2016, who diagnosed him with a wrist sprain. Plaintiff next saw his primary care physician on March 30, 2016, where additional x-rays and an EMG were obtained. Plaintiff's primary care physician noted mild degenerative changes in Plaintiff's wrist, but no fracture.

Plaintiff was subsequently diagnosed with degenerative back and neck conditions and carpel tunnel syndrome in his left hand. Plaintiff concedes that none of his degenerative back and neck conditions were caused by the accident. Plaintiff maintains, however, that the accident caused carpel tunnel syndrome, and trigger finger in his left hand. Plaintiff underwent a left carpal tunnel release and left trigger finger surgery on July 28, 2016 and has finished treatment.

At the time of the accident, Koch had a policy with Safeco that provided liability limits of $25,000.00 per person. Plaintiff made a claim against Koch's Safeco liability policy, which ultimately resulted in payment to Plaintiff of policy limits. Plaintiff also had an automobile insurance policy with Safeco, which provided uninsured/underinsured ("UIM") coverage of $50,000.00 per person.

Approximately six months after the accident, Plaintiff notified Safeco of the accident and a possible UIM claim. Plaintiff hired an attorney to represent him in his insurance dealings; Safeco had no direct interaction with Plaintiff. For over a year, Plaintiff's counsel delayed providing requested information necessary to evaluate Plaintiff's claim, including a medical authorization. Further, the medical authorization that Plaintiff belatedly completed and submitted to Safeco contained a wrong date of birth which further impeded Safeco's investigation. On April 12, 2018, over two years following the accident, Plaintiff's counsel finally provided Safeco with an updated medical release and enclosed Plaintiff's post-accident medical bills and records.

Safeco immediately evaluated Plaintiff's UIM claim and determined, based upon the information it was able to obtain, that Plaintiff had been fairly compensated by payment of Koch's $25,000.00 liability policy. From the $25,000.00 Plaintiff was paid by Koch's carrier, Plaintiff used $12,000.00 to pay all his medical bills and attorneys' fees in full. Plaintiff retained the

remaining balance of approximately $13,000.00. Therefore, Safeco contends UIM coverage was never triggered as Plaintiff was fully compensated under Koch's liability policy.

Plaintiff contends that all his post-accident medical costs are attributable to the subject accident, and thus his UIM coverage with Safeco is triggered.

**III. ANALYSIS**
**A. Breach of Contract**

In order to recover on a breach of contract theory, Plaintiff is required to prove: (1) formation of a contract; (2) breach of the contract; and (3) damages as a direct result of the breach. *Digital Design Grp., Inc. v. Info. Builders, Inc.*, 24 P.3d 834, 843 (Okla. 2001). Here, Plaintiff had a contract for insurance with Safeco at the time of the accident which provided $50,000.00 of UIM coverage per person. The undisputed evidence, however, demonstrates that Safeco did not breach the contract. Even if it did, Plaintiff has not suffered any damages. The Policy provides that Safeco would pay for Plaintiff's damages sustained and caused by the accident that he is legally entitled to recover from Koch if such injuries exceeded the amount of insurance carried by Koch.

First, the Court finds Plaintiff cannot sustain his burden of proving the accident caused his damages. Plaintiff designated an expert, Dr. Brian Chalkin, D.O., to establish the accident caused his injuries. However, in its Opinion and Order (Doc. 107), the Court granted Safeco's Motion to Preclude Testimony and Expert Report of Brian Chalkin, D.O. (Doc. 68) because the report did not comply with Fed.R.Civ.P. 26(a)(2)(B), and the report was not sufficiently relevant, or reliable. Therefore, Plaintiff has failed to establish the element of causation.

Further, Plaintiff agrees that if his injuries and treatment related solely to the accident are adequately covered by Koch's liability insurance policy, then Plaintiff's coverage for UIM is not implicated. Here, Plaintiff ultimately submitted medical-related expenses of $27,948.34 to Safeco.

Of this amount, Plaintiff's health insurer actually paid the service providers $7,032.31. Of that reduced amount, Plaintiff's health insurer accepted $3,548.82 from Plaintiff as payment in full as part of his subrogation obligation in settling his claim with Koch. Only the actual amounts paid

for any service in treatment of Plaintiff are admissible. OKLA. STAT. tit. 12, § 3009.1. Plaintiff received $25,000.00 from Koch's liability insurance policy. After paying his subrogated medical expenses and his attorneys, Plaintiff personally retained approximately $13,000.00 of the liability insurance payment. Plaintiff had no out-of-pocket expenses associated with the accident. Plaintiff's claimed injuries plainly did not exceed the value of Koch's $25,000.00 liability policy. Plaintiff was not entitled to any UIM benefits and Safeco cannot be said to have breached the Policy as a matter of law.

Even if Plaintiff could demonstrate that Safeco breached the Policy, Plaintiff has not suffered any damages as a result. Damages for breach of an insurance contract are "deemed to be the amount due by the terms of the obligation[.]" OKLA. STAT. tit. 23, § 22. Here, Plaintiff concedes that the terms of the Policy only require payment of UIM benefits if his injuries exceed the $25,000.00 limit of Koch's liability insurance policy. UIM was never triggered and Plaintiff has no damages. Accordingly, Safeco is entitled to judgment as a matter of law.

**B. Breach of the Duty of Good Faith and Fair Dealing.**

Plaintiff's primary complaint against Safeco is the amount of time he perceives it took Safeco to evaluate his UIM claim. However, the undisputed evidence demonstrates that any delay was attributable solely to Plaintiff's attorney. During his deposition, after having been shown all of Safeco's efforts that were thwarted by his attorney, Plaintiff agreed that no delay was attributable to Safeco.

In Oklahoma, an insurer has a duty to deal fairly and in good faith with its insured. *Dunbar v. State Farm Mut. Auto. Ins. Co.*, Case No. 10-CV-330-GKF-TLW, 2011 WL 5878383, *7 (N.D. Okla. Nov. 23, 2011) (citing *Christian v. American Home Assurance Co.*, 577 P.2d 899, 905 (Okla. 1977)). To make a prima facie case against an insurance company for bad faith, however, a plaintiff must establish: (1) Claimant was entitled to coverage under the insurance policy at issue; (2) the insurer had no reasonable basis for delaying payment; (3) the insurer did not deal fairly and in good faith with the claimant; and (4) the insurer's violation of its duty of

good faith and fair dealing was the direct cause of the claimant's injury. The absence of any one of these elements defeats a bad faith claim. *Bituminous Cas. Corp. v. Pollard*, 508 Fed. Appx. 780, 791 (10th Cir. 2013) (citing *Ball v. Willshire Ins. Co.*, 221 P.3d 717, 724 (Okla. 2009)) (emphasis added). Plaintiff bears the burden of proof on each element. *McCorkle v. Great Atlantic Ins. Co.*, 637 P.2d 583, 587 (Okla. 1981).

"[W]hether an insurer breaches its duty of good faith and fair dealing is dependent on the particular facts and circumstances in each case." *Haltom v. Great Northwest Ins. Co.*, 460 Fed. Appx.. 751, 757 (10th Cir. 2012) (citation omitted). "The level of culpability required for bad faith is 'more than simple negligence, but less than the reckless conduct necessary to sanction a punitive damage award . . . .'" *Butterfly-Biles v. State Farm Life Ins. Co.*, Case No. 09-CV-0086-PJC, 2010 WL 346839, *7 (N.D. Okla. Jan. 21, 2010) (quoting *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1093 (Okla. 2005)). "A clear showing that the insurer acted unreasonably and in bad faith is necessary to show a breach of that duty." *Dunbar*, 2011 WL 5878383 at *7 (citation and quotation marks omitted). "'Where an insurer has demonstrated a reasonable basis for its actions, bad faith cannot exist as a matter of law,' and the insurer is entitled to summary judgment." *Id*. (quoting *Beers v. Hillory*, 241 P.3d 285, 293 (Okla. Civ. App. 2010)).

**1. Plaintiff is Unable to Show He was Entitled to Recover UIM Benefits.**

Summary judgment is appropriate because Plaintiff is unable to prove he was entitled to recover UIM benefits. The duty of an insurer to make a timely payment on an underinsured's claim "is triggered when the insurer's investigation of the claim leads to an evaluation that the insured's total claim likely exceeds the amount of underlying liability insurance." *Dunbar*, 2011 WL 5878383 at *9 (citing *Reeder v. American Econ. Ins. Co.*, 88 F.3d 892, 894 (10th Cir. 1996).

"[A]n injured insured must demonstrate that the preconditions for loss under the uninsured motorist coverage exist before he or she can recover under the primary uninsured motorist coverage." *Gates v. Eller*, 22 P.3d 1215, 1219 (Okla. 2001). "If there is no reasonable expectation that the tortfeasor's liability limits will be exhausted, then no obligation arises for the UM carrier

to pay benefits under the insured's policy." *Carlos v. State Farm Mut. Auto. Ins. Co.*, 935 P.2d 1182, 1185 (Okla. Civ. App. 1996).

Here, Plaintiff is unable to demonstrate that he was not adequately compensated by Koch's $25,000.00 liability policy. Instead, based on the information provided to Safeco, there was a reasonable expectation that Koch's liability coverage would fully compensate Plaintiff. This expectation was not only reasonable, it was also correct. It is undisputed that the actual amount paid by Plaintiff's health insurer for his medical-related expenses was $7,032.31; of this, Plaintiff only repaid his health insurer $3,548.82 in subrogation. Only the actual amounts paid in treatment of Plaintiff are admissible. OKLA. 19 STAT. tit. 12, § 3009.1. No medical liens or related claims have been filed against Plaintiff and he has not incurred any out-of-pocket expenses. Plaintiff is not seeking damages for his degenerative neck and back conditions.

Plaintiff's only other claimed damages were lost wages of $2,500.00. However, Plaintiff admits he did not actually sustain any lost wages. Plaintiff was fully compensated by his employer for any time he missed work related to the accident. Viewing it most favorably to Plaintiff and including all of the paid medical expenses and lost wages he claims were related to the accident, Plaintiff's total claim still never came close to exceeding Koch's liability policy limit of $25,000.00. Plaintiff retained at least $13,000.00—over half—of Koch's $25,000.00 liability policy payment. UIM coverage under the Policy would only be triggered if Koch's liability policy limit was insufficient to cover Plaintiff's injuries and treatment incurred as a result of the accident. Safeco's determination that Plaintiff was made whole by Koch's insurance policy was reasonable and correct; summary judgment is proper as a matter of law.

**2. Safeco Did Not Delay in Evaluating Plaintiff's UIM Claim.**

Tort liability may only be imposed where an insurer acts unreasonably in withholding payment; a bad faith claim will not lie in the presence of a legitimate dispute. *London v. Trinity Companies*, 877 P.2d 620, 622 (Okla. Civ. App. 1994) (citing *McCorkle*, 637 P.2d at 587); *Christian*, 577 P.2d at 905; *Manis v. Hartford Fire Ins. Co.*, 681 P.2d 760, 762 (Okla. 1984). Mere

7

disagreement between the insurer and insured does not give rise to tort liability. *Christian*, 577 P.2d at 905. "Rather, tort liability may be imposed only where there is a clear showing that the insurer unreasonably, and in bad faith, withholds payment of the claim of its insured." *Id.*; *McCorkle*, 637 P.2d at 587. Furthermore, "[t]he insurer does not breach the duty of good faith by refusing to pay a claim or by litigating a dispute with its insured if there is a 'legitimate dispute' as to coverage or the amount of the claim, and the insurer's position is 'reasonable and legitimate'." *Oulds*, 6 F.3d at 1436 (citing *Thompson v. Shelter Mut. Ins.*, 875 F.2d 1460, 1462 (10th Cir. 1989) (quoting *Manis*, 681 P.2d at 762)). In order to establish a cause of action for bad faith, the insured must present evidence from which a jury could reasonably conclude that the insurer did not have a reasonable good faith reason for withholding payment under the policy. *McCoy v. Oklahoma Farm Bureau Mut. Ins. Co.*, 841 P.2d 568, 572 (Okla. 1992). Additionally, "[t]he entire course of conduct between the parties is relevant to the question whether the insurer acted in good faith." *Willis v. Midland Risk Ins. Co.*, 42 F.3d 607, 613 (10th Cir. 1994) (citing *Timmons v. Royal Globe Ins. Co.*, 563 P.2d 907, 917 (Okla. 1982)).

Here, it is undisputed that Plaintiff owed duties and obligations to Safeco under the Policy. Plaintiff's duties and obligations to Safeco included, among other things, compliance with the terms of the Policy; prompt notification of the accident and claimed loss; submission to physical examinations; providing documentation of claimed losses; providing medical bills and records; and providing accurate medical authorizations to Safeco. It is further undisputed that Safeco had no duty to provide UIM coverage to Plaintiff unless Plaintiff fully complied with the terms of the Policy. Insureds and their agents have a reciprocal duty to deal fairly and act in good faith with the insurance company. *Christian*, 577 P.2d at 904; *Gruenberg v. Aetna Ins. Co.*, 510 P.2d 1032, 1036-37 (Cal. 1973); *See also Barre v. State Farm Fire & Cas. Co.,* 982 F. Supp. 2d 1267, 1277 (N.D. Okla. 2013) (where insurer's delay in investigation and payment was attributable to the insureds' refusal to provide necessary documents or cooperate with insurer's investigation, summary judgment was granted in favor of insurer on bad faith claim). "[A]n insured's failure to provide information critical to the insurer's consideration of the claim may "serve as a defense to defeat

liability or . . . to reduce recovery." *Garrett v. Fairfield Ins. Co.*, Case No. 02-367-P, 2003 WL 23274567, *12 (E.D. Okla. Oct. 22, 2003) (citing *First Bank of Turley v. Fid. & Deposit Ins. Co.*, 928 P.2d 298, 308-09 (Okla. 1996)).

Plaintiff sued Safeco because "it look[ed] like somebody's dragging their feet." Plaintiff concedes that the only person dragging his feet was Plaintiff's attorney. Safeco is not liable for Plaintiff and his attorney's refusal to cooperate and resulting delay in providing information necessary for Safeco to evaluate Plaintiff's UIM claim. The undisputed evidence demonstrates that Safeco consistently, over the course of nearly two years, contacted Plaintiff's attorney seeking current and prior medical records, wage loss documentation, a recorded statement, a medical authorization, and a demand package from Plaintiff. These efforts were largely ignored. For example, Plaintiff stonewalled for nearly two years after the accident before providing Safeco with a medical authorization—one that was fatally flawed. Plaintiff delayed providing Safeco with a recorded statement for fourteen months after Safeco first requested it. Plaintiff delayed for over two years following the accident before producing his medical records and bills he claimed were related to the accident. Even then, Plaintiff refused to obtain and produce missing documents to Safeco, despite admitting it would have been most efficient for him or his counsel to obtain the same. Finally, Plaintiff filed this action while Safeco was attempting to secure his Independent Medical Examination ("IME"), creating additional delay. Plaintiff cannot now, in good conscience, allege that Safeco "delayed" anything when the record reflects that any delay was attributable to Plaintiff's attorney's refusal to cooperate with Safeco. It would be manifestly unjust to consider Safeco as having acted in bad faith when the undisputed evidence demonstrates it was Plaintiff, through his counsel, who obstructed the handling of Plaintiff's UIM claim. When viewing the entire course of conduct between the parties, the undisputed evidence demonstrates that Safeco acted reasonably and in good faith and no material delay is attributable to Safeco. Summary judgment in Safeco's favor is granted.

### 3. Safeco's Handling of Plaintiff's UIM Claim was Reasonable.

An insurer has a duty to "conduct an investigation reasonably appropriate under the circumstances." Buzzard v. Farmers Ins. Co., 824 P.2d 1105, 1109 (Okla. 1991). However, that duty is not unlimited and is judged according to the circumstances. Roberts v. State Farm Mut.Auto. Ins. Co., 61 Fed. Appx. 587, 590-91 (10th Cir. 2003). "An error in judgment does not constitute bad faith." Badillo, 121 P.3d at 1116 n.15 (citing National Mut. Cas. Co. v. Britt, 218 P.2d 1039, 1039 (Okla. 1950)). Bad faith requires more than a mere mistake on the part of the insurance company. Id. Oklahoma law requires that an insurer's actions be reasonable and legitimate under the circumstances, not necessarily correct. Manis, 681 P.2d at 762; Oulds, 6 F.3d at 1442 (fact that a reasonable jury could find in favor of an insurer is strong evidence that the dispute is "legitimate" and that the insurer did not engage in bad faith by denying the claim). In order to establish a cause of action for "bad faith" an insured must prove there was no legitimate dispute. Manis, 681 P.2d at 762.

In the instant case, Plaintiff concedes that a legitimate dispute exists concerning the nature and value of Plaintiff's injuries and UIM claim. The court finds that Safeco acted reasonably, diligently, promptly, and in conformance with insurance industry standards. Existence of a legitimate dispute is fatal to Plaintiff's claim for bad faith. So too is the reasonableness of Safeco's investigation of Plaintiff's claim. Plaintiff agrees it was reasonable for Safeco to request and require his prior medical records. When Plaintiff finally, over two years following the accident, provided some current medical records, Safeco immediately reviewed the same and determined, based on the information provided, that Plaintiff had been adequately compensated by Koch's $25,000.00 liability insurance. In response, Plaintiff refused to produce certain missing medical records. Safeco replied by requesting an IME, which was reasonable. Plaintiff, however, delayed the eventual IME by commencing this action. Finally, Plaintiff concedes that his degenerative neck and shoulder conditions were not related to the accident and are not covered by the Policy. Thus, it was reasonable for Safeco not to attribute their cause to the accident. Safeco's investigation and actions were reasonable and supported by fact.

Accordingly, the court finds summary judgment in Safeco's favor on Plaintiff's bad faith claim is proper as a matter of law.

**4. Safeco's Conduct was not the Direct Cause of Plaintiff's Injury.**

Where "there is no competent evidence from which a jury could reasonably find a causal nexus between the act and the injury," the question of proximate cause may be determined by the court. Gillham v. Lake Country Raceway, 24 P.3d 858, 860 (Okla. 2001). With respect to his damages, Plaintiff filed this lawsuit because he feels he should be compensated and that he believes someone was dragging their feet. Plaintiff now agrees that Safeco was prompt and diligent in trying to obtain information from his attorney, who was largely non-responsive. Plaintiff is not seeking any damages related to his degenerative back and neck conditions. Plaintiff has finished treatment for his left wrist.

Concerning his left wrist, Plaintiff also concedes that Safeco was not the cause of this injury. Plaintiff has not incurred any out-of-pocket expense related to the accident. Plaintiff has not submitted any other evidence concerning claimed damages directly attributable to Safeco. Simply put, Plaintiff has not suffered any damages as a result of Safeco's conduct, a required element of his bad faith claim. Safeco respectfully submits that summary judgment in its favor is proper.

**IV. Punitive Damages**

Even where there is evidence to support the recovery of actual damages in a bad faith action against an insurer, which there is not here, submission of the issue of punitive damages to a jury may be improper. *Willis*, 42 F.3d at 614-15 (citing *McLaughlin v. National Benefit Life. Ins. Co.*, 772 P.2d 383, 385, 387, 389 (Okla. 1988)). Punitive damages do not, *ipso facto*, follow from *every* breach of the duty of good faith and fair dealing. *Id*. (citing *McLaughlin*, 772 P.2d at 385). "Under Oklahoma law, punitive damages may be awarded in addition to compensatory damages *only* upon proof that a defendant 'has been guilty of conduct evincing a wanton or reckless disregard for the rights of another, oppression, fraud or malice, actual or presumed . . . .'" *Id*. (citing

OKLA. STAT. tit. 23, § 9(A)) (emphasis added). In *McLaughlin*, the Oklahoma Supreme Court affirmed the trial court's demurrer for the defendants on the punitive damages claim in a bad faith action concerning a life insurance policy. 772 P.2d at 389. There, as is the situation in this present action, the undisputed evidence demonstrated a legitimate controversy as to the amount the insureds claimed they were owed. *Id.* The Supreme Court explained, "[i]n the absence of evidence to show that [the insurer's] actions were tainted by oppression, fraud, malice or gross negligence there was no basis for submission of the punitive damage issue to the jury." *Id.*

In this case, there is no evidence to support the submission of the question of punitive damages to the jury. Safeco consistently and repeatedly requested information from Plaintiff's attorney to evaluate Plaintiff's claim. As Plaintiff's counsel began to finally supply some information, Safeco immediately evaluated Plaintiff's UIM claim and determined, based on the information it had obtained, that Plaintiff had been fully compensated under Koch's liability policy payment of $25,000.00. Safeco's determination is further supported by the fact that Plaintiff—after paying all his medical bills *and* his attorneys—retained $13,000.00 of the money paid by Koch's insurer. Plaintiff has not presented any evidence of acts which were intentionally wrongful, oppressive, or fraudulent, and there is no basis for submission of the punitive damages issue to a trier of fact. Safeco respectfully submits it is entitled to summary judgment on Plaintiff's claim for punitive damages.

### V. CONCLUSION

For the foregoing reasons, Safeco's Motion for Summary Judgment [Doc. 69] is granted.

**DATED this 11th day of March, 2020.**

TERENCE C. KERN
United States District Judge